UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

     Plaintiff,        04 CV 3076 (LDW) (JO)

  v.

COMPREHENSIVE BENEFITS
CONSULTANTS, INC.,

     Defendant.

-------------------------------------------------------X

# PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL SUMMARY........................................................................................... 2

ARGUMENT ........................................................................................................... 3

I.     SUMMARY JUDGMENT MUST BE DENIED BECAUSE
     DEFENDANT FAILED TO ESTABLISH THE ABSENCE OF
     GENUINE ISSUES OF MATERIAL FACT ............................ 3

II.    DEFENDANT IS AN EMPLOYER OF HART, MARTONE AND
     ANGELONE ....................................................................................... 4

        A.    Defendant is an Integrated Enterprise ...................... 6

        B.    Defendant is a Joint Employer ............................. 8

        C.    Defendant is an Employer Because it Affected Access to
            Employment Opportunities .................................. 9

III.   HART, MARTONE AND ANGELONE WERE SUBJECTED TO A
     HOSTILE WORK ENVIRONMENT BY DEFENDANT BECAUSE
     THEY ARE WOMEN ........................................................................... 10

        A..   Defendant's Sexual Harassment of Jean Marie Addeo ........ 11

        B.    Defendant's Sexual Harassment of Laura Hart ............... 12

        C.    Defendant's Sexual Harassment of Francine Angelone ..... 13

        D.    Defendant's Sexual Harassment of Michelle Martone ....... 14

        E.    Plaintiff's Evidence of a Sexually Hostile Environment
            is Sufficient to Defeat Summary Judgment .................... 16

IV.   DEFENDANT RETALIATED AGAINST HART AND ADDEO .......... 17

        A.    Defendant Retaliated against Hart for Engaging in
            Protected Activity and Complaining to Defendant's
            Attorney About Defendant's Sexual Harassment During
            its Investigation of Addeo's EEOC Charge of
            Discrimination .............................................17

      B.     Defendant Instigated Defamation Lawsuits Against
              Addeo and Hart for Engaging in Protected Activity
              Under Title VII and Their Continued Participation in
              EEOC's Lawsuit ............................................. 18

V.     DEFENDANT IS VICARIOULSY LIABLE FOR THE HARASSMENT
        COMMITTED BY ITS OWNER AND ITS PRESIDENT ...................... 21

      A.     *Farragher/Ellerth* Defense is Not Available to
              Defendant Because the Harassers Were Defendant's
              Proxy/Alter Ego ............................................. 21

      B.     Defendant Failed to Prevent or Correct the Harassment,
              Even After Claimants Complained of the Hostile
              Environment ................................................. 23

CONCLUSION ............................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

*Ackel v. National Communications, Inc.*, 339 F. 3d 376, 383 (5th Cir. 2003)................. 22

*Alie v. NYNEX Corp.*, 158 FRD 239 (E.D.N.Y. 1994) ......................................... 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................... 3, 4

*Arbaugh v. Y & H Corp.*, 380 F.3d 219 (5th Cir. 2004), *cert. granted*, 125 S.Ct. 2246, 161 L.Ed.2d 1057 (2005) ................................................................ 5

*Arculeo v. On-Site Sales & Marketing*, 425 F.3d 193 (2d Cir. 2005) ............... 3, 6, 8, 9

*Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983)............................................ 6

*Berry v. Stevinson Chevrolet*, 74 F.3d 980 (10th Cir. 1996) ................................. 19, 21

*Bill Johnson's Restaurants, Inc. v. National Labor Relations Bd.*, 461 U.S. 731 (1983)... 19

*Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir. 1997) ................................... 11

*Burlington Indus. v. Ellerth*, 524 U.S. 742, 758 (1998) .............................. 22, 23, 24

*Burns v. McGregor Electronic Industries, Inc.*, 955 F.2d 559, 564 (8th Cir. 1992) ......... 22

*Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132 (2d Cir. 1985) .................... 8, 9

*Columbo v. O'Connell*, 310 F.3d 115 (2d Cir. 2002) ......................................... 4

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d. Cir. 1995) ........................ 6, 16

*DaSilva v. Kinso Int'l Corp.*, 229 F.3d 358, 366 (2d Cir. 2000) ............................ 5

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55 (2d Cir. 1998) ................................ 4

*Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54 (2d Cir. 1987) ...... 4

*Dortz v. City of New York*, 904 F.Supp. 127 (S.D.N.Y. 1995) ............................... 5

*Dunbar v. County of Saratoga*, 358 F.Supp.2d 115 (N.D.N.Y. 2005) ..................... 16

*Dyke v. McCleave*, 79 F.Supp.2d 98, 105 (N.D.N.Y. 2000) ............................... 16

*EEOC v. A. Sam & Sons Produce Co., Inc.,* 872 F.Supp. 29 (W.D.N.Y. 1994) ......... 17

*EEOC v. Everdry Mgmt. Services, Inc.,* 2005 US Dist. LEXIS, No. 01 –CV-6329 (CJS) (W.D.N.Y. January 31, 2005) ................................................................. 5

*EEOC v. Gurnee Inn Corp.,* 48 Fair Empl. Cas. (BNA) 871, 879 (N.D. Ill. 1988), *aff'd,* 914 F. 2d 815 (7th Cir. 1990) ............................................... 11

*EEOC v. Kallir, Phillips, Ros, Inc.,* 401 F.Supp. 66 (S.D.N.Y. 1975).................... 21

*EEOC v. Nat'l Educ. Ass'n,* 422 F.3d 840 (9th Cir. 2005)..................................... 12

*EEOC v. Reeves,* 2003 U.S. Dist. LEXIS 24701(C.D. Cal. Dec. 9, 2003) ................. 22, 23

*EEOC v. Sage Realty Corp.,* 507 F.Supp. 599 (S.D.N.Y. 1981) ........................... 5, 9

*EEOC v. Virginia Carolina Veneer Corp.,* 495 F.Supp. 775 (W.D. Va. 1980) ............ 19

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) ....................................... 22, 23

*Farulla v. New York School Construction Auth.,* 277 F.Supp.2d 140 (E.D.N.Y. 2003) ........................................................................... 9

*Feingold v. New York,* 366 F.3d 138 (2d Cir. 2004)......................................... 11

*Fernandez v. M & L Milevoi Mgmt., Inc.,* 357 F.Supp.2d 644 (E.D.N.Y. 2005) ......... 5

*Gabriele v. Cole National Corp.,* 78 F.Supp.2d 61 (N.D.N.Y. 1999) ..................... 6

*Gallagher v. Delaney,* 139 F.3d 338 (2d Cir. 1998) ......................................... 4

*Goodwin v. Orange & Rockland Utilities, Inc.,* 2005 WL 2647929 (S.D.N.Y. Oct. 14, 2005)...................................................................... 16

*Gordon v. New York City Bd. of Ed.,* 232 F.3d 111 (2d Cir. 2000)........................... 17

*Gryga v. Ganzman,* 991 F.Supp. 105 (E.D.N.Y. 1998) ...................................... 5

*Harmar v. United Airlines, Inc.,* 1996 U.S. Dist LEXIS 5346 (N.D. Ill.) .................. 19

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993) .............................. 1, 10, 20, 21, 22

*Hogue v. Roach,* 967 F.Supp. 7 (D.D.C. 1997). ............................................... 20

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000)..................................   16

*Johnson v. West*, 218 F3d 725, 730 (7th Cir. 2000) ..........................................   22

*Kotcher v. Rosa and Sullivan Appliance Ctr. Inc.*, 957 F. 59 (2d Cir. 1992) ............   4

*Kronish v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998) ..........................................   24

*Laurin v. Pokoik,* 2004 US Dist. LEXIS 4066, 2004 WL 513999
(S.D.N.Y. March 14, 2004) ...................................................................   6, 9

*Lihili Fashions Corp. v. NLRB,* 80 F.3d 743 (2d Cir. 1996) .................................   6

*Meritor Sav. Bank FSB v. Vinson,* 477 U.S. 57 (1985) .......................................   10

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000).........................   20

*Mullinson-Montague v. Poernicki*, 224 F.3d 1224 (10th Cir. 2000) ...........................   22

*Nelson v. Beechwood Organization*, 2004 U.S. Dist. LEXIS 25622, 2004 WL 2978278,
03-cv-4441 (GEL)(S.D.N.Y. Dec. 21, 2004) ...................................................   9

*O'Bradovich v. Village of Tuckahoe*, 325 F.Supp.2d 413 (S.D.N.Y. 2004) ...............   21

*Peltier v. Apple Health Care, Inc.*, 130 F.Supp.2d 285 (D.Conn. 2000) ............   9

*Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004) .......................................   11, 12

*Pospicil v. The Buying Office, Inc.*, 71 F.Supp.2d 1346 (N.D.Ga. 1999).....................   22

*Raniola v. Bratton*, 243 F.3d 610 (2d Cir. 2001). .......................................   11, 12 17

*Reynolds-Diot v. Group 1 Software, Inc.*, 2005 WL 1980989, No. 3:03-cv-0245-M
(N.D.Texas, Dallas Div., August 17, 2005) ................................................   23

*Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426 (2d Cir. 1999) .........   10, 16

*Rivera v. Puerto Rican Home Attendant Servs., Inc.,* 922 F.Supp 943, 949
(S.D.N.Y. 1996) .............................................................................   6

*Robinson v. Shell Oil Co.*, 519 U.S. 337(1997). ..............................................   18

*Schade v. Coty, Inc.*, 2001 US Dist. LEXIS 8440 (S.D.N.Y. 2001) ...........................   6

*Schwapp v. Town of Avon,* 118 F. 3d 106 (2d Cir. 1997). .....................................   11

*Smith v. Akstein, M.D.*, ___ F.Supp.2d ___, 2005 WL 3592146
(N.D.Ga. Dec. 30, 2005)……………………………………………………………… 23

*Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054 (2d. Cir. 1982) …………….. 9

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) …………………………………… 10, 11

*Tillery v. ATSI, Inc.*, 242 F.Supp.2d 1051 (N.D.Ala.2003) ………………………….. 22

*Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) ………………………………………11,16, 22

*Walker v. AMR Services Corp.*, 971 F.Supp 110 (E.D.N.Y. 1997) ………………………. 16

*Ward v. Wal-Mart, Inc.* 2001 WL 4730069 (D.N.M. 2001) ………………………………. 19

*Whidbee v. Garzarelli Food Specialties, Inc.* 223 F. 3d 62 (2d Cir. 2000) ……………… 11

*York v. Ass'n of the Bar*, 286 F.3d 122 (2d Cir. 2002) …………………………………. 5

*Zveiter v. Brazilian National Superintendency of Merchant Marine*, 833 F.Supp 1089
(S.D.N.Y. 1993) ……………………………………………………………………… 16

## STATUTES AND RULES

*Fed. R. Civ. Pro. 56 (c)* ................................................................................................... 3

*42 USC § 2000e-2(a)(1)*………………………………………………………………… 10

## PRELIMINARY STATEMENT

The Equal Employment Opportunity Commission (EEOC) submits this memorandum of law in opposition to Defendant Comprehensive Benefits Consultants' (CBC) Motion for Summary Judgment. EEOC claims that Defendant violated Title VII of the Civil Rights Act of 1964 (Title VII) by creating and maintaining a sexually hostile work environment for claimants Jean Marie Addeo (Addeo), Laura Hart Marra (Hart), Michelle Martone (Martone) and Francine Angelone (Angelone), constructively discharging Addeo, and retaliating against Addeo and Hart for engaging in protected activity and participating in EEOC's lawsuit. The hostile work environment was created and maintained by Defendant's owner and CEO, Louis Russo, and his son, Michael Russo, who was Defendant's Vice President and later, its President. Contrary to Defendant's assertions, there is substantial evidence showing that (a) claimants Hart, Martone and Angelone were employees of Defendant CBC[1]; (b) the sexual harassment of Hart, Martone and Angelone was severe or pervasive[2]; (c) Defendant retaliated against Hart and Addeo for engaging in protected activity; (d) Defendant is vicariously liable for the acts of its owner, Louis Russo and its President, Michael Russo under *Harris v. Forklift Systems*, 510 U.S. 17 (1993) and its progeny. As such, Defendant's motion for summary judgment must be denied in its entirety.

## FACTUAL SUMMARY

CBC owner Louis Russo, and his son, CBC President Michael Russo, created and maintained a sexually hostile work environment for Defendant's female employees, including claimants Addeo, Hart, Martone and Angelone. On multiple occasions, CBC owner Louis Russo told a claimant he was telephoning her while naked in a his hot tub; told a claimant that she was

---

[1] It is undisputed that Addeo was an employee of Defendant. *See* Defendant's Statement Pursuant to Local Civil Rule 56.1 (Def. Facts), ¶ 4.

[2] Defendant does not claim that there is insufficient evidence regarding the claims that Defendant subjected Addeo to a sexually hostile work environment. *See* Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Def. Memo), p. 1.

"so stupid [she] could fuck up a wet dream"; and circulated sexist jokes at management meetings with his predominantly female management team, including a picture showing naked female genitals. (EEOC Facts, ¶ 32). He routinely demonstrated hostility towards claimants and his other female employees: he continually called or referred to women employees as "fucking cunts," "dumb fuckin' cunt," "stupid ass cunt," "fucking bitches," "dumb bitch," "dumb broad," "fucking morons," and "fucking babies." (Plaintiff EEOC's Local Rule 56.1 Statement of Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (EEOC Facts), ¶¶ 32, 38, 63-64, 71, 151,158, 168). He intimidated women employees, including claimants, and treated them in a demeaning manner that he did not use with male employees, by cursing, screaming and yelling at them in front of others while criticizing male employees in an office, and engaging in physically threatening behavior. (EEOC Facts, ¶¶ 32, 38, 63, 71, 92, 151,155, 157-158, 168). He and his son often "elbowed and joked with each other" in Addeo's presence about the shirt that a female employee who had a large chest would wear, saying, "Jen can keep wearing those little tops." (EEOC Facts, ¶ 32).

CBC President Michael Russo, the son of Louis Russo, engaged in severe, pervasive sexual harassment of claimants and other women in claimant's presence at CBC. (Def. Facts, ¶ 8, EEOC Facts, ¶¶ 32, 92, 151, 168). For example, he constantly made vulgar and sexually explicit comments and gestures to claimants: he grabbed his crotch; made pelvic thrusting gestures to simulate sexual intercourse; constantly talked about women's breasts, stated that he liked women with "big boobs," referred to a women employee's breasts as "headlights" and her genitals as "camel toe," described a woman employee as having "nipples the size of [a female Vice President's] head"; told Addeo that she "probably didn't give it up enough" to her husband and that "men really like blow jobs"; told Hart that he would "fuck" her and that she'd "enjoy it,

2

every minute of it"; requested that Hart "suck his dick under the table"; often told Hart to "sit on

my lap" or invited her to kiss him or "make out" with him; asked a female employee to go to the

bathroom so they could play "fireman"; made a comment about the thong a female employee

was wearing; made derogatory comments about women's bodies and their weight; made

insulting comments about Martone's legs; and told Martone when she was pregnant that her

husband "was a lucky guy because during the fifth month of pregnancy his wife wanted to hump

like rabbits." (EEOC Facts, ¶¶ 32, 92, 151, 168).

The women complained for naught, and Defendant retaliated against Addeo and Hart for

doing so[3]. (EEOC Facts ¶¶ 136,161, 176,178, 180, 181). Addeo, for example, was told by Louis

Russo that if she didn't like what he was saying, she "could pack [her] shit and get the fuck out

of the building." As a result, she was constructively discharged, finally leaving CBC "[a]fter

spending months dealing with the situation and being beaten down..." (EEOC Facts, ¶¶ 32-33).

All of this conduct occurred at CBC's headquarters, which housed an integrated enterprise

consisting of Defendant, CFM Advisors and Louis Russo's Phoenix agency. (EEOC Facts, ¶ 1).

## ARGUMENT

## I. SUMMARY JUDGMENT MUST BE DENIED BECAUSE DEFENDANT FAILED TO ESTABLISH THE ABSENCE OF GENUINE ISSUES OF MATERIAL FACT

A court may grant a motion for summary judgment under Fed. Rule Civ. Pro. 56(c) only

if all of the evidence viewed in the light most favorable to the non-moving party is sufficient to

show that there is no genuine issue of any material fact. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242 (1986)(Summary judgment should be denied "if the evidence is such that a reasonable

---

[3] Defendant claims that Angelone "never filed an EEOC complaint or pursued any action against CBC." (Def.
Memo, p. 1). There is substantial evidence that Angelone did complain to CBC about the hostile work environment.
(EEOC Facts, ¶¶ 161, 163). In addition, under Section 706 of Title VII, EEOC is explicitly authorized to bring an
action on behalf of a group of aggrieved individuals. *General Tel. v. EEOC*, 446 U.S. 318 (1990). Once one person
has filed a timely charge with EEOC, other individuals are not required to file charges in order to get relief. *Snell v.
Suffolk County*, 782 F.2d 1094 (2d Cir. 1986); *Tolliver v. Xerox Corp.*, 918 F.2d (2d Cir. 1990). Hart and Addeo
filed timely EEOC Charges, thus, Angelone was not required to do so.

3

jury could return a verdict for the non-moving party"). A court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir. 1987). Credibility issues and the weighing of evidence must be left to the jury. *Anderson*, 477 U.S. 242 at 255 (internal citation omitted). Courts are reluctant to grant summary judgment on sexual harassment claims, since there is no precise test to determine whether a work environment is sufficiently severe or pervasive to alter the conditions of a victim's employment. *See e.g.*, *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998) and *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998). Similarly, "[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Kotcher v. Rosa and Sullivan Appliance Ctr. Inc.*, 957 F.2d 59 (2d Cir. 1992).

## II.   DEFENDANT IS AN EMPLOYER OF HART, MARTONE AND ANGELONE

There is substantial evidence, requiring jury resolution, that Hart, Martone and Angelone were employees of CBC, despite Defendant's claims that Martone was employed by CFM Advisors and that Hart and Angelone were employed by Phoenix. (Def. Facts, ¶¶ 15, 28-30). First, Defendant admitted in its own moving papers that Hart, Martone and Angelone were CBC employees. *See* Def. Facts, ¶ 9, Def. Exh. F (identifying Hart, Martone, and Angelone among its female employees, and also identifying Angelone as one of its supervisors) and Def. Facts, ¶ 66, Def. Exh. P (stating "every CBC employee signed a statement" regarding sexual harassment, and including statement signed by Angelone). Additionally, CBC was an employer of Hart, Martone and Angelone for purposes of Title VII as an integrated employer, joint employer, or as a party who significantly affected their access to employment opportunities.

Courts have construed Title VII's definition of "employer" liberally so that a direct employment relationship is not required. *Gryga v. Ganzman,* 991 F.Supp. 105, 108 (E.D.N.Y 1998); *Dortz v. City of New York,* 904 F.Supp. 127, 144 (S.D.N.Y. 1995), citing *EEOC v. Sage Realty Corp.,* 507 F.Supp. 599, 611 (S.D.N.Y. 1981)('employer' includes persons "who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, privileges of employment."). "In keeping with this liberal construction, the courts of this Circuit have held that the absence of a direct employment relationship does not bar a Title VII claim, and that liability extends beyond conventional single-employer situations." *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 245 (E.D.N.Y. 1994). The most recent Second Circuit case on this issue is *Arculeo v. On-Site Sales & Marketing,* 425 F.3d 193 (2d Cir. 2005)[4], which discussed the use of the "single employer" doctrine and "joint employer" doctrine for imposition of liability under Title VII[5]. In general, a "single employer" situation exists "'where two nominally separate entities are actually a part of a single integrated enterprise...'" *Arculeo,* 425 F.3d 193 at 198 (internal citations omitted). In such circumstances, which can include separate corporations under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise. *Arculeo,* 425 F.3d 193 at 198. In contrast, the entities in a joint employer relationship "are separate legal entities, but ...

---

[4] Defendant erroneously cites *York v. Ass'n of the Bar,* 286 F.3d 122 (2d Cir. 2002) as the most recent case and states that a substantial remunerative relationship must exist for an entity to be considered an individual's employer. Def. Memo, p. 2). *York* did not involve the single employer/integrated enterprise doctrine and is inapposite. The issue in *York* was whether plaintiff was a volunteer or an employee of defendant. *See EEOC v. Everdry Mgmt. Services, Inc.,* 2005 U.S. Dist LEXIS, No. 01-CV-6329 (CJS)(W.D.N.Y. January 31, 2005)(Roberts Decl., ¶ 33, Exh. DD).

[5] Contrary to defendant's assertion that the "question of whether a defendant is an "employer" within the meaning of Title VII is an issue of subject matter jurisdiction" (Def. Memo, p. 2), the Second Circuit has determined that this issue is NOT a matter of subject matter jurisdiction. *Arculeo,* 425 F.3d 193 at 197, n.4, citing *DaSilva v. Kinso Int'l Corp.,* 229 F.3d 358, 366 (2d Cir. 2000); *See also, Fernandez v. M & L Milevoi Mgmt., Inc.,* 357 F.Supp.2d 644, 647, n.2 (E.D.N.Y. 2005)(criticizing defense counsel for not citing *DaSilva*). The Supreme Court heard oral argument on January 11, 2006 to determine a split between the circuits as to whether the 15 employee minimum under Title VII is a prerequisite to a court's subject matter jurisdiction. *Arbaugh v. Y & H Corp.,* 380 F.3d 219 (5th Cir. 2004), *cert. granted,* 125 S.Ct. 2246, 161 L.Ed.2d 1057 (2005).

[they] handle certain aspects of their employer-employee-relationship jointly." *Arculeo*, 425 F.3d 193 at 198 (internal citations omitted).

### A.      Defendant is an Integrated Enterprise

Whether two separate entities constitute an integrated enterprise is a question of fact for the jury. *Gabriele v. Cole National Corp.,* 78 F.Supp.2d 61 (N.D.N.Y. 1999)(citing *Lihili Fashions Corp. v. NLRB,* 80 F. 3d 743 (2d Cir. 1996).  The Second Circuit is guided by four factors in determining whether two or more related entities are an integrated enterprise: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir. 1995).  Centralized control of labor relations is the most important factor, including whether the companies have separate human resources departments and whether the entity "'establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees.'" *Laurin v. Pokoik,* 2004 U.S. Dist. LEXIS 4066, 2004 WL 513999 (S.D.N.Y. March 14, 2004)(internal citation omitted)(Roberts Decl., ¶ 34, Exh. EE).  The critical question is: "'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Schade v. Coty, Inc.,* 2001 U.S. Dist. LEXIS 8440 (S.D.N.Y. 2001)(quoting *Cook,* 69 F.3d at 1240 (internal quotation omitted)(Roberts Decl., ¶ 35, Exh. FF). "All four criteria need not be present in all cases, and even when no evidence of common control of labor relations policy is presented, the circumstances may be such that the Title VII single-employer doctrine is applicable." *Armbruster v. Quinn,* 711 F.2d 1332 (6th Cir. 1983).  The test ultimately depends upon "whether 'all the circumstances of the case' tend to show the absence of an arm's length relationship between the two entities." *Rivera v. Puerto Rican Home Attendant Servs., Inc.,* 922 F.Supp 943, 949 (S.D.N.Y. 1996)(internal citation omitted).  In this case there is

substantial overlapping evidence of the existence of all four factors with respect to CBC and

CFM Advisors on the one hand and CBC and the Phoenix agency on the other. (EEOC Facts, ¶¶

1, 2, 12,14, 15, 23, 28, 30,115,128,130,169).

First, there is abundant evidence that operations were interrelated. CBC, CFM Advisors,

and the Phoenix agency operated out of the same office at 1800 Walt Whitman Road in Melville,

Long Island. (EEOC Facts, ¶ 1). The companies shared a common entranceway and receptionist.

(EEOC Facts, ¶ 23). The receptionist, Hart, fielded calls for all the companies, eventually

became Louis and Michael Russo's assistant and typed letters and performed other

administrative duties for CBC, while still on Phoenix's payroll. (EEOC Facts, ¶ 28). The

companies shared a common office manager, and later Director of Operations, Nicholas

Giarrusso, who was hired by Louis Russo and placed on the Phoenix payroll. (EEOC Facts, ¶

23). Angelone served as office manager for all of the companies while on the Phoenix payroll.

(EEOC Facts, ¶30). CBC and CFM Advisors shared a website. (EEOC Facts, ¶ 2). Former

CBC President Greenstein worked closely with CFM Advisors and had overall responsibility for

both CFM Advisor and CEP. (EEOC Facts, ¶ 6). When Michael Russo became CBC President,

he served as CFM President, generated business for CFM Advisors and brought CBC clients to

CFM Advisors. (EEOC Facts, ¶¶ 8, 14). Hart testified that CFM Advisors, CEP, CBC, CCG

and the Phoenix agency were the "same thing." (EEOC Facts, ¶ 28).

Second, there is abundant evidence of centralized control of labor relations. Giarrusso

functioned in the role as Human Resources person for all of Louis Russo's companies, including

Defendant, CFM Advisors and the Phoenix agency. (EEOC Facts, ¶ 23). The companies shared

a common "Anti-Sexual Harassment Policy" advising employees to make sexual harassment

complaints to their supervisor or to Giarrusso. (EEOC Facts, ¶ 23). CBC President Michael

7

Russo interviewed and hired Martone for her position with CFM, and Angelone was interviewed by Giarrusso, Michael Russo, and Louis Russo. (EEOC Facts, ¶¶ 30, 15, 169).

Third, there is overwhelming evidence of common management. Louis Russo was the managing agent for the Phoenix agency and the owner, operator and sole shareholder of Defendant CBC and CFM Advisors. (EEOC Facts, ¶¶ 1 and 7). Michael Russo, who claims never to have worked for Phoenix, nonetheless supervised employees on the Phoenix agency payroll who worked at the CBC offices, including Hart. (EEOC Facts, ¶ 26). Hart was also often supervised by Louis Russo and CBC Vice President Susan Nally. (EEOC Facts, ¶ 28). CBC identifies Angelone as a CBC supervisor. (EEOC Facts, ¶ 9). Louis Russo supervised Angelone and frequently told her he was her "boss" and that he would "fucking fire" her. (EEOC Facts, ¶ 30). Michael Russo was Martone's boss. (EEOC Facts, ¶ 169).

Finally, there is overwhelming evidence of common ownership or financial control. Louis Russo is and was the owner, operator and sole shareholder of Defendant CBC, CFM Advisors, and CEP, which were operated under the marketing name of CCG, (EEOC Facts, ¶ 1), and he held the contract with Phoenix Life insurance to be a managing agent, with authority to hire and fire employees to work in his agency. (EEOC Facts, ¶ 23).

**B.    Defendant is a Joint Employer**

In the alternative, Defendant is a joint employer of Angelone, Hart, and Martone. The Second Circuit has not fully articulated the test for joint employment in the context of Title VII, *Arculeo*, 425 F.3d 193 at 199, n7. It has, however, applied the joint employer doctrine in other employment litigation. *Arculeo*, 425 F.3d 193 at 202. *See, e.g., Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132 (2d Cir. 1985). Factors used to determine joint employment include exercise of authority to hire, fire and discipline, control over pay and insurance, and supervision.

8

*Arculeo*, 525 F.3d 193 at 202, citing *Clinton's Ditch*. District courts in this Circuit have applied

these factors to joint employer issues in Title VII cases. *See, e.g., Laurin v. Pokoik, supra*;

*Peltier v. Apple Health Care, Inc.*, 130 F.Supp.2d 285 (D.Conn. 2000); *Nelson v. Beechwood*

*Organization*, 2004 U.S. Dist. LEXIS 25622, 03-cv-4441 (GEL)(S.D.N.Y. Dec. 21,2004)

(Roberts Decl., ¶ 36, Exh. GG); *Farulla v. New York School Construction Auth.*, 277 F.Supp.2d

140 (E.D.N.Y. 2003)(ADEA lawsuit); *EEOC v. Sage Realty Corp.*, 507 F.Supp. 599 (S.D.N.Y.

1981)(building management company was joint employer because it exercised control over

terms and conditions of employment, including hiring, training, supervision, discharge and the

uniform policy at issue in the lawsuit). As set forth in Section II.B., above, there is substantial

evidence about the control exercised by Defendant over the hiring and supervision of Hart,

Martone, and Angelone, to justify application of the joint employer doctrine.

C.    **Defendant Affected Access to Employment Opportunities**

The Second Circuit defined the contours of the broad reach of Title VII in *Spirt v.*

*Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054, 1063 (2d. Cir. 1982), *vacated and rem'd on*

*other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), *reinstated and modified*

*on other grounds*, 735 F.2d 23 (2d Cir. 1984), *cert denied*, 469 U.S. 881, 105 S.Ct. 247, 83

L.Ed.2d 185 (1984):

> [T]he term employer . . . is sufficiently broad to encompass any party who
> significantly affects access of any individual to employment opportunities,
> regardless of whether that party may technically be described as an 'employer' of
> an aggrieved individual as that term has generally been defined at common law.
> Id. at 1063 (internal citations omitted).

As discussed above, CBC had much greater influence over employees working within its

joint facility, including Hart, Martone, and Angelone, than that of the mere third-party employee

benefits administrator found to be an employer in *Spirt*. Indeed, CBC's owner, Louis Russo, and

9

his son Michael Russo, the CBC President, at the CBC premises, perpetrated the harassment. Therefore, CBC is an employer under this test as well.

## III.   HART, MARTONE AND ANGELONE WERE SUBJECTED TO A HOSTILE WORK ENVIRONMENT BY DEFENDANT BECAUSE THEY ARE WOMEN

Title VII forbids employers from discriminating against "any individual with respect to...compensation, terms, conditions, or privileges of employment, because of such individual's...sex..." 42 U.S.C. § 2000e-2 (a)(1). Plaintiff "may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank FSB v. Vinson,* 477 U.S. 57, 65 (1985); *see Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003). Among the factors to consider when an environment is sufficiently hostile are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see Terry*, 336 F.3d 128 at 148. According to the Supreme Court, "[f]or sexual harassment to be actionable, it must be sufficiently severe *or* pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)(emphasis added). "Pervasiveness" and "severity" are wholly separate grounds, and EEOC need only prove one or the other. *See, e.g., Terry*, 336 F.3d 128 at 149.

There is no "mathematically precise test" to determine whether the conduct is sufficiently pervasive, *Harris*, 510 U.S. at 22-23; *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999). The mere number or duration of offensive comments is not decisive. *Johnson v. Tower Air, 149 F.R.D. 461* (E.D.N.Y 1993). The court must look at the "totality of the circumstances." *Terry*, 336 F.3d 128 at 148, *quoting Richardson*, 180 F.3d at 437-38. The Second Circuit has "repeatedly cautioned against setting the bar too high."

10

*Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)[6]. "'[W]hile a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such a quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Feingold*, 366 F.3d 138 at 150 (citing *Whidbee v. Garzarelli Food Specialties, Inc.* 223 F.3d 62, 70 (2d Cir. 2000)). The harassment of claimants consisted of far more than mild or isolated incidents - it was "constant" and "daily."

Courts have held that "second-hand" knowledge of discriminatory comments can impact the work environment for a claimant who was not present for comment, but learned of it subsequently." *Schwapp v. Town of Avon*, 118 F. 3d 106, 111 (2d Cir. 1997). *See also Torres v. Pisano,* 116 F.3d 625, 632 (2d Cir. 1997)(work environment hostile where plaintiff learns about hostile comments from others); *EEOC v. Gurnee Inn Corp.*, 48 Fair Empl. Cas. (BNA) 871, 879 (N.D. Ill. 1988), aff'd, 914 F. 2d 815 (7th Cir. 1990)(sexually hostile work environment found when claimant forced to observe harassing conduct towards others, even if not subjected directly to much harassment); (*Black v. Zaring Homes, Inc.,* 104 F.3d 822, 826 (6th Cir. 1997) (emphasizing that "sex based comments need not be directed at a plaintiff in order to constitute conduct violating Title VII"). Here, claimants were directly subjected to harassment and forced to observe harassing conduct towards others.

Defendant argues that because male employees and staff were also treated badly, the harassment directed at women employees is not actionable. (Def. Memo, pp. 7-8). The cases cited by Defendant for that argument are trial court opinions or cases from other circuits. (Def. Memo, p. 7). Defendant did not cite the two leading Second Circuit decisions on this issue, *Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004) and *Raniola v. Bratton*, 243 F.3d 610 (2d

---

[6] The cases cited by Defendant regarding the "modicum of proof necessary to demonstrate a severe and pervasive hostile work environment" (Def. Memo, pp. 5-6) were decided before *Feingold* and *Terry*.

Cir. 2001). Harassment directed at women employees need not be sexual in nature to constitute a Title VII violation. *See Raniola v. Bratton*, 243 F.3d 610, 617-618 (2d Cir. 2001). In addition, "the mere fact that men and women are both exposed to the same offensive circumstances on the job site...does not mean that, as a matter of law, their work conditions are necessarily equally harsh." *Petrosino*, 385 F.3d 210 at 221. The Court reasoned that although all employees in that case were routinely exposed to sexually offensive language and graphics, a reasonable jury could find this conduct more demeaning of women than men. *Petrosino*, 385 F.3d 210 at 222. *See also EEOC v. Nat'l Educ. Ass'n*, 422 F.3d 840 (9th Cir. 2005)(offensive conduct that is not facially sex-specific may violate Title VII if there is sufficient circumstantial evidence of qualitative and quantitative differences in the harassment suffered by female and male employees). Contrary to Defendant's allegations, there is substantial evidence that claimants were routinely subjected to harassment of a sexual nature, and were also treated in a hostile and intimidating manner because they were women.

### A.   Defendant's Sexual Harassment of Jean Marie Addeo

There is substantial evidence that Defendant subjected Addeo to a sexually hostile work environment. (EEOC Facts, ¶ 32). Defendant does not seek summary judgment regarding EEOC's claims on that issue. (Def. Memo, pp. 1, 4-10).

### B.   Defendant's Sexual Harassment of Laura Hart

There is abundant evidence that Defendant CBC subjected Hart to a sexually hostile environment consisting of severe and pervasive sexual harassment of her and other females in her presence on a "daily basis." (EEOC Facts, ¶¶ 92-95, Def. Facts, ¶¶ 93-94). CBC's President, Michael Russo invited Hart to "sit on [his] lap" on numerous occasions, requested that Hart "suck his dick under the table," and invited her to kiss him or "make out" with him on

numerous occasions. (EEOC Facts, ¶¶ 92, 95). He told her that she was "so stupid, [she] could

fuck up a wet dream." (EEOC Facts, ¶ 92). He frequently called her a "fucking idiot" and

frequently gave her "the finger." (EEOC Facts, ¶ 92). In Hart's presence, Michael Russo invited

Jobert Aramburo to accompany him to the bathroom so they could play "fireman." Aramburo

told Hart that Michael Russo made comments about the undergarment Aramburo was wearing.

(EEOC Facts, ¶ 92). In an episode also witnessed by Angelone, Michael Russo told Hart that he

would "fuck her and she would love every minute of it." (EEOC Facts, ¶ 92). Michael Russo

called Hart and told her he was driving past the Statue of Liberty and that he would take her to

the top of the Statue of Liberty and "do [her]." (Def. Facts, ¶ 94). Hart was also subjected to

sexual harassment by CBC owner Louis Russo. (EEOC Facts, ¶ 92). Louis Russo treated Hart

differently than he treated men. (EEOC Facts, ¶ 92). For example, Louis Russo would demand

that Hart get his breakfast or coffee by saying, "get my fuckin' breakfast." (EEOC Facts, ¶ 92).

He never talked this way to the male employees. (EEOC Facts, ¶ 92). Louis Russo treated

women employees in an intimidating, demeaning and hostile manner different from how he

treated men. (EEOC Facts, ¶¶ 32, 92, 71, 151, 159, 168).

### C.     Defendant's Sexual Harassment of Francine Angelone

There is substantial evidence that Defendant CBC subjected Angelone to a sexually

hostile environment consisting of severe and pervasive sexual harassment of her and other

females in her presence on a daily basis. (EEOC Facts, ¶¶ 151-159). Louis Russo called

Angelone a "fucking cunt," used the words "fuck" and "cunt" constantly in her presence,

frequently called her a "fucking moron," and told her to hire "only pretty women because they're

all fucking morons anyway." (EEOC Facts, ¶ 151). Angelone was directed to pick up Louis

Russo's laundry and jock itch cream. (EEOC Facts, ¶ 151). Just as he intimidated and was

hostile towards other female employees, (EEOC Facts, ¶ ¶ 32, 92, 71, 159, 168), Louis Russo frequently yelled and screamed at Angelone, engaged in physically threatening behavior towards her by pounding his fist against a door frame only inches from her face, and constantly told her "I'm fucking going to fire you." (EEOC Facts, ¶ 151). Angelone heard Louis Russo tell a female employee while in a management meeting that her "ass" was "big." (EEOC Facts, ¶ 151). Nicole Nugent, a co-worker of Angelone, told Angelone that Louis Russo offered Nugent his "empire" if she would sleep with him. (EEOC Facts, ¶ 151). Angelone was also subjected to a hostile environment by Michael Russo. For example, she was present in the mail room when Michael Russo told Hart that "[y]ou would love every minute if I fucked you." (EEOC Facts, ¶ 151). Angelone heard Michael Russo tell Martone and another female employee that their breasts were extremely large, and heard him tell Martone that her husband must be very "horny" because Martone was pregnant. (EEOC Facts, ¶ 151). Angelone heard Michael Russo tell her staff that his wife knows that he "fools around." (EEOC Facts, ¶ 151).

### D.     Defendant's Sexual Harassment of Michelle Martone

There is substantial evidence that Defendant CBC subjected Martone to a sexually hostile environment consisting of severe and pervasive sexual harassment toward her and directed at other females in her presence on a daily basis. (EEOC Facts, ¶¶ 168, 171-174). Michael Russo frequently harassed Martone by making vulgar comments about her body, including commenting about the size of her breasts and made hand gestures to indicate that her breasts were getting bigger. (EEOC Facts, ¶¶ 168, 172). When Martone first started working for Defendant, Michael Russo would make vulgar comments about her legs, telling her that her legs were "jacked" and that she should wear skirts more, and Tobin, Martone's immediate supervisor, overheard Michael Russo tell Martone that her calves were getting fat. (EEOC Facts, ¶¶ 168,

171). Michael Russo often made other derogatory comments about Martone's body, such as "you packed it on good" (EEOC Facts, ¶ 168), and he called her a "tuna" on "almost a daily basis" when she was pregnant. (EEOC Facts, ¶¶ 168, 172). On one occasion when Michael Russo made a derogatory comment about her weight, Martone told him to "back off" and he responded by saying "oh, what's wrong with you, you're very hormonal, are you pregnant." (EEOC Facts, ¶ 168). Comments were made to Martone during her pregnancy that there are hormones during pregnancy that affect sexual behavior. (EEOC Facts, ¶ 168). For example, Michael Russo told Angelone that her husband "was a lucky guy because during the fifth month of pregnancy, his wife wanted to hump like rabbits," that "now that she's pregnant, she must get horny a lot," and that her husband must be "horny" because of her pregnancy. (EEOC Facts, ¶¶ 168, 173). Michael Russo made sexually harassing comments to other women in Martone's presence: he would make comments when women employees walked by, and would follow one woman down the hall. (EEOC Facts, ¶ 168). On one occasion he told a female employee "oh, no bra today? That's great, you should do that every day." (EEOC Facts, ¶ 168). Martone also testified that a co-worker moved her office so that she would not be subjected to the hostile environment. (EEOC Facts, ¶ 168). The atmosphere for Martone and other women at CBC was hostile and demeaning, with constant use of foul language and vulgarities, including "[t]he 'C' [cunt] word being thrown around as if it was good morning" by Louis Russo. (EEOC Facts, ¶ 168). CBC owner Louis Russo "went to go kick" the base of Martone's chair while telling her to get the "F" out of her chair. (EEOC Facts, ¶ 168). Louis Russo also subjected Martone to unwanted touching: at a Christmas gathering in the office, in front of fellow co-workers, he hugged and placed his head on Martone's breast. (EEOC Facts, ¶ 168). Martone was very uncomfortable and pushed Louis Russo away. (EEOC Facts, ¶ 168).

**E.     Plaintiff's Evidence of a Sexually Hostile Environment is Sufficient to Defeat Summary Judgment**

All four claimants have alleged comments and actions sufficiently severe and pervasive to establish a sexually hostile work environment created and maintained by Defendant. (EEOC Facts at ¶¶ 92, 151, 155, 157,168, 178). These kinds of questions are "especially well-suited for jury determination and summary judgment may be granted only when reasonable minds could not differ on the issue." *Richardson*, 180 F.3d 426 at 436 (internal citation omitted). Here, taking all circumstances into account and drawing all reasonable inferences in Plaintiff's favor, a trier of fact could reasonably find that the comments and tangible acts alleged, which are claimed to have occurred repeatedly, rise to the level of an actionable hostile work environment. *See, e.g.*, *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)(finding issue of fact as to whether harassment rose to hostile environment where there was only one incident involving a prolonged, sexually offensive diatribe in front of a group of co-workers); *Torres v. Pisano*, 116 F.3d 625, 631-633 (2d Cir. 1997)(finding a question of fact as to a hostile environment claim where plaintiff alleged "constant" harassment, but could only specify a few comments); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1237, 1239 (2d Cir. 1995)(plaintiff presented "sufficient direct evidence of gender discrimination" to survive summary judgment where supervisor said that women were "basically...on the earth for fucking purposes only" and referred to female employees as "a bunch of dumb cunts")[7].

---

[7] *See also, Dunbar v. County of Saratoga*, 358 F.Supp.2d 115 (N.D.N.Y. 2005)(summary judgment denied where plaintiff alleged eight specific incidents of harassment and that certain harassment occurred "'on more than one occasion,'" "'on several occasions,'" "'on a regular basis,'" and "on a daily basis."); *Dyke v. McCleave,* 79 F.Supp.2d 98, 105 (N.D.N.Y. 2000)(plaintiff and other female co-workers repeatedly subjected to profanity, including "cunt," "bitch," "mother-fucker" and "stupid cunt"); *Zveiter v. Brazilian National Superintendency of Merchant Marine,* 833 F.Supp 1089, 1096 (S.D.N.Y. 1993)(defendant engaged in five instances of offensive conduct); *Goodwin v. Orange & Rockland Utilities, Inc.,* 2005 WL 2647929, at *8 (S.D.N.Y. Oct. 14, 2005)(summary judgment denied; harasser made frequent sexual comments about plaintiff, snapped her bra once, made sexual gestures and once made a comment suggesting oral sex.)(Roberts Decl., ¶ 37, Exh. HH); *Walker v. AMR Services Corp.,* 971 F.Supp 110, 115 (E.D.N.Y. 1997)(summary judgment denied; while driving plaintiff

16

**IV.    DEFENDANT RETALIATED AGAINST HART AND ADDEO**

A claim for retaliation against claimants under Title VII is established by a showing that "1) they engaged in a protected activity; 2) the employer was aware of the protected activity; 3) they suffered adverse action; and 4) a causal connection exists between the protected activity and the adverse action." *Raniola v. Bratton,* 243 F.3d 610, 624 (2d Cir. 2001)(citing *Gordon v. New York City Bd. of Ed.*, 232 F.3d 111, 116 (2d Cir. 2000). There is substantial evidence here to show that Defendant retaliated against Addeo and Hart for complaining about sexual harassment by Defendant and participating in EEOC's lawsuit, requiring denial of Defendant's motion for summary judgment.

**A.    Defendant Retaliated Against Hart for Engaging in Protected Activity and Complaining to Defendant's Attorney About Defendant's Sexual Harassment During its Investigation of Addeo's EEOC Charge of Discrimination**

There is substantial evidence that Defendant retaliated against Hart for engaging in protected activity in supplying information to Defendant about its sexual harassment of her and Addeo in a meeting with its attorney, Brian Sokoloff, during its investigation of Addeo's EEOC Charge of Discrimination. (EEOC Facts, ¶¶ 108-130). In that meeting, which occurred in July or August, 2003, Hart told Defendant's attorney that she witnessed Louis Russo screaming at Addeo and calling Addeo a "fat ass," she was a witness to a lot of women being sexually harassed, and she was sexually harassed by CBC's President, Michael Russo. (EEOC Facts, ¶ 119). Shortly after this meeting in mid-September 2003, Defendant told Hart that she would have to "transfer" from the Phoenix payroll to the CBC payroll, or she could remain on the Phoenix payroll but would have to resume less fulfilling job duties and she would have no advancement opportunities. (EEOC Facts, ¶ 119). Defendant claimed that this "transfer" would

---

home from work defendant slowed the car, lunged at her said "I want to be all over you" and later told a coworker that he "had the hots for [plaintiff].") *EEOC v. A. Sam & Sons Produce Co., Inc.,* 872 F.Supp. 29, 34 (W.D.N.Y. 1994)(plaintiff experienced five instances of sexually offensive conduct in a month).

give Hart the salary increase she had requested months before meeting with Defendant's counsel about the Addeo Charge of Discrimination.  However, the "transfer" resulted in an adverse change in the terms and conditions of Hart's employment, including the loss of health benefits that were better under her previous health insurance plan, requiring Hart to pay $30 more per paycheck and loss of vision coverage, loss of 401(d) matching funds, and loss of a tuition reimbursement program.  (EEOC Facts, ¶¶ 112, 116-117).  Before Hart met with Defendant's counsel, she had advanced from doing receptionist work for CBC, CFM Advisors, CEP and Phoenix into serving as Louis and Michael Russo's assistant.  She had continued to assume greater responsibilities such that her work at the time she met with Defendant's counsel was "solely for the benefit of CBC" even though Defendant kept her on the Phoenix payroll.  (EEOC Facts, ¶¶ 28, 112; Defendant Exhibit Q).  After meeting with Defendant's counsel and complaining about sexual harassment, Defendant told Hart that she could either accept a "transfer" to the CBC payroll (with corresponding loss in benefits) or stay on the Phoenix payroll and return to doing "reception desk and mailroom" tasks, with no possibility of advancement.  (EEOC Facts, ¶¶ 112, 120; Defendant Exhibits Q and R).  Hart did not voluntarily transfer to CBC's payroll - she had "no place to go."  Thus, Defendant's actions were adverse to her.  (EEOC Facts, ¶ 112, 119-120).

**B.**     **Defendant Instigated Defamation Lawsuits Against Addeo and Hart for Engaging in Protected Activity Under Title VII and Their Continued Participation in EEOC's Lawsuit**

The Supreme Court has recognized that the primary purpose of Title VII's retaliation provision is to maintain "unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  The Supreme Court has also recognized that a "lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation" and that

the "chilling effect of a state lawsuit upon an employee's willingness to engage in protected

activity is multiplied where the complaint seeks damages..." *Bill Johnson's Restaurants, Inc. v.

National Labor Relations Bd.,* 461 U.S. 731 (1983)(discussing NLRB's authority to issue cease

and desist order).  Thus, courts have found that employers are liable for unlawful retaliation

under Title VII for causing lawsuits, counterclaims, or other actions to be taken against victims

of discrimination who file charges or participate in EEOC litigation.  *See, e.g., EEOC v. Virginia

Carolina Veneer Corp.*, 495 F.Supp. 775 (W.D. Va. 1980)(it was "unquestionably retaliatory"

under Title VII for an employer to file a state court action for defamation.); *Berry v. Stevinson

Chevrolet,* 74 F.3d 980, 986 (10th Cir. 1996)(filing malicious prosecution civil lawsuit against

former employee may constitute adverse action sufficient to violate Title VII); W*ard v. Wal-

Mart, Inc.* 2001 WL 4730069 (D.N.M. 2001)(filing frivolous lawsuits may constitute an adverse

employment action for purposes of a retaliation claim)(Roberts Decl., ¶ 38, Exh. II); *Harmar v.

United Airlines, Inc.,* 1996 U.S. Dist LEXIS 5346 (N.D. Ill.)(the filing of lawsuits, not in good

faith and instead motivated by retaliation, can be the basis for a claim under Title VII)(Roberts

Decl., ¶ 39, Exh. JJ).

EEOC filed its complaint on July 21, 2004 and spoke with the press on that date; Hart

and Addeo participated with EEOC and spoke about the allegation in the complaint. (EEOC

Facts, ¶ 62; Defendant Exhibit A).  In August, 2004, Defendant requested mediation.  The

mediation session was originally scheduled for November 10, 2004, but EEOC and the mediator

agreed to Defendant's request that the mediation be rescheduled to November 17, 2004. (EEOC

Facts, ¶ 62).  Addeo and Hart were scheduled to be present at mediation, together with Louis

Russo and Michael Russo.  (EEOC Facts, ¶ 62).  On November 16, 2000, one day before the

mediation session, Defendant commenced defamation lawsuits against Addeo and Hart in state

court, and served the summons and complaint on Addeo and Hart. (EEOC Facts, ¶ 62). The complaints allege that Addeo and Hart defamed Michael Russo for making factual allegations about their claims in EEOC's lawsuit in the meetings EEOC held with the press in connection with the EEOC lawsuit, allege business losses, and seek damages in the sum of $7.5 million against Addeo and $7.5 million against Hart. (EEOC Facts, ¶ 62; Defendant Exhibits M and N). The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward. (EEOC Facts, ¶ 62; Defendant Exhibits M and N). Michael Russo, who is named as the plaintiff in the lawsuits, is the President of CBC and one of the alleged harassers; the complaint signed and filed by the CBC in-house counsel alleges defamation in the context of claimant's allegations of the sexual harassment by Defendant as alleged in EEOC's complaint. (EEOC Facts, ¶¶ 8, 62; Defendant Exhibits A, M and N). EEOC was granted leave to file an amended complaint alleging these additional acts of retaliation. (EEOC Facts, ¶ 62, Defendant Exhibit C).

It has long been recognized that a company operates through its officers, employees, and agents, and may be held liable for the discriminatory acts of its officers and employees. *See, e.g., Harris v. Forklift Systems*, 510 U.S. 17 (1993)(holding corporation vicariously liable for sexual harassment by its president). "Any relief granted under Title VII is against the employer, not against the individual employees, even if it is their conduct that constituted a violation of Title VII." *Hogue v. Roach*, 967 F.Supp. 7, 9 (D.D.C. 1997). Thus, employers are held liable for retaliatory acts by their employees, including retaliatory acts that take place outside of the workplace. *See, e.g., Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787, 793 (6th Cir. 2000)(reasonable juror could conclude that plaintiff was subjected to retaliatory harassment by supervisor after she complained about his harassment; alleged retaliation included supervisor

following plaintiff home from work and throwing roofing nails on her home driveway).

Similarly, employers are liable for retaliatory legal actions against an employee who engaged in

protected activity under Title VII. *See, e.g., Berry*, 74 F.3d 980 at 987-88 (upholding district

court's finding that employer caused EEOC claimant's former co-worker to initiate a criminal

complaint against the plaintiff in retaliation for filing a Charge of Discrimination with EEOC,

notwithstanding employer and the co-worker's denial that the employer had encouraged the co-

worker to file the criminal charges).  The cases cited by Defendant are inapposite.  *O'Bradovich*

*v. Village of Tuckahoe*, 325 F.Supp.2d 413 (S.D.N.Y. 2004) and *Columbo v. O'Connell*, 310

F.3d 115 (2d Cir. 2002) deal with the issue of whether a defamation lawsuit by a public official

against a citizen constitutes the requisite "state action" necessary to hold either a governmental

body or the public official liable for a violation of the citizen's constitutional rights.  Neither case

addresses the anti-retaliation provisions of Title VII or the analysis used in Title VII retaliation

cases for employer liability[8].  Rigid enforcement against retaliatory action is required to assure

the effectiveness of Title VII.  *EEOC v. Kallir, Phillips, Ros, Inc.*, 401 F.Supp. 66, 72 (S.D.N.Y.

1975).  Defendant's arguments, which seek to circumvent the retaliation protections provided by

Title VII, should be rejected by this Court, and summary judgment should be denied.

## V.   DEFENDANT IS VICARIOUSLY LIABLE FOR THE HARASSMENT COMMITTED BY ITS OWNER AND ITS PRESIDENT

### A.   *Farragher/Ellerth* Defense is Not Available to Defendant Because the Harassers Were Defendant's Proxy/Alter Ego

In *Harris v. Forklift Systems*, 510 U.S. 17 (1993), the Supreme Court held that the

Defendant company was vicariously liable for the harassment committed by its President.  Since

---

[8] In footnote 7 of its Brief (Def. Memo, p. 15), Defendant notes that Addeo and Hart never filed a retaliation charge with respect to the lawsuits, but does not say what relevance that would have to its motion.  In any event, Addeo's and Hart's Charges of Discrimination alleged retaliation (Defendant Exhibits I and J), as did EEOC's original Complaint.  (Defendant Exhibit A).  There was no need for any additional EEOC Charges or investigation.

then, courts have continued to hold that an employer is vicariously liable for the harassment committed by those who are "within the class of an employer organization's officials who may be treated as the organization's proxy." *Faragher v. Boca Raton*, 524 U.S. 755, 789-90 (1998)(citing with approval *Harris*, and *Burns v. McGregor Electronic Industries, Inc.*, 955 F.2d 559, 564 (8th Cir. 1992)(harassment by owner); *Torres v. Pisano*, 116 F.3d, 625, 634-635, and n. 11 (2d Cir. 1997)(noting that a supervisor may hold a sufficiently high position "in the management hierarchy of the company for his actions to be imputed automatically to the employer"), *cert. denied*, 522 U.S. 997 (1997). Similarly in *Burlington Indus. v. Ellerth*, 524 U.S. 742, 758 (1998), the Supreme Court stated that vicarious liability attaches "where the agent's high rank in the company makes him or her the employer's alter ego."

Since the decisions in *Farragher* and *Ellerth*, a number of courts which have addressed the issue have held that the affirmative defense outlined in *Farragher* and *Ellerth* is not available where the alleged harasser was "proxy" or "alter" ego of the company. *See, e.g., Johnson v. West*, 218 F3d 725, 730 (7th Cir. 2000)(vicarious liability "automatically applies" if the harassing supervisor is "within that class of an employer organization's officials who may be treated as the organization's proxy" or when a supervisor's harassment culminates in tangible employment action); *Ackel v. National Communications, Inc.,* 339 F. 3d 376, 383 (5th Cir. 2003)(finding that if the harasser is the organization's proxy then the *Faragher/Ellerth* affirmative defense is unavailable); *EEOC v. Reeves*, 2003 U.S. Dist. LEXIS 24701 at *27(C.D. Cal. Dec. 9, 2003)(Roberts Decl., ¶ 40, Exh. KK)(*Faragher/Ellerth* affirmative defense not available as a matter of law where harasser was proxy/alto ego of Defendant); *see also Mullinson-Montague v. Poernicki*, 224 F.3d 1224 (10th Cir. 2000); *Tillery v. ATSI, Inc.*, 242 F.Supp.2d 1051 (N.D.Ala.2003); *Pospicil v. The Buying Office, Inc.*, 71 F.Supp.2d 1346 (N.D.Ga. 1999); *Smith v.*

*Akstein, M.D.,* \_\_\_ F.Supp.2d \_\_\_, 2005 WL 3592146 (N.D.Ga. Dec. 30, 2005)(Roberts Decl., ¶

41, Exh. LL); *Reynolds-Diot v. Group 1 Software, Inc.*, 2005 WL 1980989, No. 3:03-cv-0245-M

(N.D.Texas, Dallas Div., August 17, 2005)(Roberts Decl., ¶ 42, Exh. MM).

As the court stated in *EEOC v. Reeves*, 2003 U.S. Dist. LEXIS 24701 at *27:

> the Ellerth and Faragher Court developed the affirmative defense to further Title VII's statutory policy establishing the employer's affirmative obligation to prevent violations and "give credit . . .to employers who make reasonable efforts to discharge their duty," but whose best efforts are frustrated by rogue supervisors. The affirmative defense has no place where the company proxy perpetrates the harassment, because the employer cannot be said to be entitled to any "credit" for having taken reasonable steps to eradicate harassment in the workplace.

The *Reeves* court also stated at *28:

> "[w]hat is more unreasonable is that if "the *Faragher/Ellerth* affirmative defense did apply to the proxy context victims of harassment would essentially be required to complain to the proxy/harasser. Further, creation of a complaint procedure which allows the employee to complain to another individual and not the alter ego harasser can be of no effect because the individual to whom the complaint is brought cannot implement any kind of discipline against the harasser, hence, making the complaint procedure or policy in place illusory."

In this case, Defendant is a privately held corporation and the harassers are its owner,

Louis Russo, and his son, Michael Russo, its President. (EEOC Facts, ¶¶ 1, 8, 32, 92, 151, 168).

They are the proxies or alter egos of Defendant. No complaint procedure would have been

effective to remedy the hostile work environment in this case, and the complaint procedure, in

any event, was ineffective.

### B.   Defendant Failed to Prevent or Correct the Harassment, Even After Claimants Complained of the Hostile Environment

In the alternative, if the Court finds that the *Faragher/Ellerth* defense is available,

Defendant has failed to meet its burden. Defendant must show that (1) it exercised reasonable

care to prevent or correct the harassment, and (2) claimants unreasonably failed to take

advantage of any preventive or corrective opportunities provided by the employer. *Burlington*

23

*Indus. v. Ellerth*, 524 U.S. 742, 745. The employer bears the burden of persuasion with regard to proving this affirmative defense. *Burlington Indus. v. Ellerth,* 524 U.S. 742 at 765. Defendant cannot meet this burden.

As to the first prong of the defense, there is substantial evidence that although Defendant had a sexual harassment policy, it did not train its employees about the policy, and its officers and supervisors violated the policy by a engaging in harassment (owner Louis Russo and President Michael Russo). (EEOC Facts, ¶¶ 1, 8, 32, 36, 92, 151, 168, 178).

As to the second prong of the defense, there is substantial evidence that claimants did not unreasonably fail to take advantage of preventive or corrective measures provided by the employer, and, in fact, complained about the hostile environment for naught[9]. (EEOC Facts, ¶¶ 92, 95, 103, 112, 136,147, 149, 161, 168, 171, 176,178, 180, 181). For example, Tobin, Martone's direct supervisor, was present on at least two occasions when Martone was sexually harassed by Michael Russo, but admitted that he did not report it to anyone, because "who am I going to report it to?" (EEOC Facts, ¶ 176). Addeo complained to Greenstein, who was then CBC's President; although CBC's policy did not require that complaints be in writing, Greenstein testified that she would not report a complaint she received unless it was put in writing and the person told her they wanted Greenstein to handle it further. (EEOC Facts, ¶ 178). Giarrusso, who handled Defendant's Human Resources issues and who was supposed to receive all complaints of sexual harassment, was present when sexual harassment occurred and was told about the hostile environment, but did nothing. (EEOC Facts, ¶¶ 32, 161). When

---

[9] Defendant makes much ado about nothing in its argument about tapes of the harassment that Hart played for various supervisors. (Def. Memo, pp. 18-19). Hart misplaced the tapes after she was told by Defendant's counsel that they were inadmissible at trial, and EEOC does not intend to introduce any evidence of such tapes, and there is no evidence that Hart intentionally destroyed the tapes in order to warrant an adverse inference under *Kronish v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998). (EEOC Facts, ¶¶ 135-146). There is substantial evidence Hart complained of the harassment. (EEOC Facts, ¶¶ 92, 95, 103, 112, 147, 149).

Addeo complained about Louis Russo's harassment, he told her that if she did not like what he was saying, she "could pack [her] shit and get the fuck out of the building." (EEOC Facts, ¶ 32). When Addeo complained to Louis Russo that his son, Michael Russo, was harassing her, Louis Russo told her to ignore it. (EEOC Facts, ¶¶ 32,178). In addition, the claimants were afraid to press their complaints because they knew that another female employee who had complained about the work environment had been fired. (EEOC Facts, ¶ 175).

Summary judgment must be denied as to Defendant's defense.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied in its entirety.

Dated: New York, New York
        January 20, 2006

Respectfully Submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

ELIZABETH GROSSMAN
Regional Attorney

JUDY KEENAN
Acting Supervisory Trial Attorney


_____
MONIQUE J. ROBERTS (6338)
Trial Attorney
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York
212-336-3704 (T)
212-336-3623 (F)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff Equal Employment Opportunity

Commission's Memorandum of law in Opposition to Defendant's Motion for Summary

Judgment, was served by Overnight Mail this 20th day of January 2006 to:

Brian Sokoloff, Esq.
Miranda & Sokoloff, LLP
240 Mineola Boulevard
Mineola, NY 11501
516-741-7676

MONIQUE J. ROBERTS
Trial Attorney
Equal Employment
Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
212-336-3704 (Telephone)
212-336-3623 (Fax)

1