UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
                    Plaintiff,

            v.                                          Civil Action No.
                                                        04 Civ. 3076 (LDW)(JO)


COMPREHENSIVE BENEFITS
CONSULTANTS
                    Defendant.
-------------------------------------------------------------x


## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S LOCAL RULE 56.1 STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff EEOC submits this Statement of Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment Pursuant to Local Rule 56.1. EEOC responds to Defendant's "Statement Pursuant to Local Civil Rule 56.1" as follows:

## I.   PARTIES AND COMPANIES INVOLVED

1.      EEOC admits. CBC is part of an integrated enterprise that includes Defendant Comprehensive Benefits Consultants (CBC), Comprehensive Financial Management Advisors, Inc. (CFM Advisors), and Comprehensive (or Complete) Employee Pensions (CEP), all operated under the marketing name of Comprehensive Consulting Group (CCG). Louis Russo is and was the owner and sole shareholder of these entities. (Roberts Decl. ¶ 3, Exh. A, Deposition of Louis Russo (L. Russo Dep.) pp. 5, 19-25, 49-50). These companies, along with an agency office of Phoenix Life Insurance, managed by Louis Russo, are located at 1800 Walt Whitman Road in Melville, Long Island, and share the office facilities. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 5, 19-25, 31, 49-50; ). Louis Russo was the managing agent for the Phoenix agency from 1992 to 2004, when Phoenix closed its field offices and Louis Russo replaced it with a Guardian agency. (Roberts Decl. ¶ 3, Exh. A, Exh. A, L. Russo Dep., pp. 27-28, 74-77). *See also* EEOC Facts in ¶ 23 below, incorporated by reference. Nicholas Giarrusso, who was on the Phoenix agency payroll, handled human resource functions for all of Louis Russo's companies, including CBC, CFM Advisors, and the Phoenix agency. *See* EEOC Facts in ¶ 23 below, incorporated by reference. Francine Angelone, who was on the Phoenix payroll, was the office manager for all of Louis Russo's companies, including CBC, CFM Advisors, and the Phoenix agency. *See* EEOC Facts in ¶ 30 below, incorporated by reference.

1

2.      EEOC admits. Defendant's Exhibit E indicates that Defendant CBC and CFM Advisors share a website at the CCG website, http://www.ccg1800.com/, and that they are part of an integrated enterprise.

3.      EEOC admits.

4.      EEOC admits.

5.      EEOC admits.

6.      EEOC denies. There is evidence that Donna Greenstein was President of CBC at least through May 2002. Defendant's Exhibit BB, an organizational chart for CBC, lists Donna Greenstein as the President of CBC and Michael Russo as the Vice President of Marketing. Michael Russo testified that the chart was created sometime **after** an employee named Lisette Melendez was hired, and that it accurately designated the names and positions of the officers and department heads in CBC at the time it was made. (Roberts Decl. ¶ 4, Exh. B, Deposition of Michael Russo (M. Russo Dep.) pp. 82-86). Melendez was hired on May 6, 2002 as a CBC Customer Service Manager. (Roberts Decl. ¶ 5, Exh. C, Deposition of Lisette Melendez, (Melendez Dep.) p.10). Moreover, Greenstein worked closely with CFM Advisors and had overall responsibility for both CFM Advisors and CEP. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 24).

7.      EEOC admits that Greenstein testified that she was one of the founders of CBC. (Def. Ex. 20, Greenstein Dep.). However, Louis Russo is and was the owner, operator and sole shareholder of Defendant CBC, CFM Advisors, and CEP, and all operated under the marketing name of CCG. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 5, 19-25, 49-50). Moreover, Greenstein worked closely with CFM Advisors and had overall responsibility for both CFM Advisors and CEP. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 24).

8.      EEOC denies.  There is evidence that Donna Greenstein was the President of
CBC until at least May 2002.  *See* EEOC Facts in ¶ 6, incorporated by reference.  EEOC admits
that Michael Russo became President of CBC at some point.  In addition, there is evidence that
Michael Russo generated business for CFM Advisors, and that as President of CBC, he acted as
President of CFM Advisors as well.  (Roberts Decl. ¶ 7, Exh. E, Deposition of Michelle Martone
(Martone Dep.), pp. 40; 48-52).  Michael Russo supervised employees on the Phoenix agency
payroll who worked at the CBC offices, including Laura Hart.  (Roberts Decl. ¶ 10, Exh. H.,
Deposition of Laura Hart (Hart Dep.), 171, 304).  Michael Russo is the son of Louis Russo.
(Roberts Decl. ¶ 4, Exh. B, M. Russo Dep., p.12).

9.      EEOC admits.  Defendant has admitted that Hart, Michelle Martone and Francine
Angelone were CBC employees.  Defendant's Exhibit F, "lists of defendant CBC's male and
female employees for the past 10 years," (Declaration of Steven C. Stern (Stern Decl.), ¶ 7)
identifies Hart, Martone, and Angelone as CBC employees, and identifies Angelone as a CBC
supervisor.

10.     EEOC denies that this is a material fact relevant to this summary judgment
motion.  EEOC admits that Defendant's Exhibit F appears to identify 244 employees and
identifies 71 of them as minorities.  Defendant's Exhibit F, "lists of defendant CBC's male and
female employees for the past 10 years," (Stern Decl., ¶ 7) identifies Hart, Martone, and
Angelone as CBC employees, and also identifies Angelone as a CBC supervisor.

11.     EEOC denies that this is a material fact relevant to this summary judgment
motion.  EEOC admits that Def. Exh. CC lists Donna Greenstein as President, Jean Marie Addeo
as Vice President of Client Services, Michael Russo as Vice President of Marketing, Susan Nally

3

as Vice President of Claims, and Lisette Melendez as Manager-Customer Service for Defendant CBC.

12.    EEOC admits. CFM Advisors was part of an integrated enterprise with Defendant CBC. Louis Russo is and was the owner and sole shareholder of Defendant CBC, CFM Advisors, and CEP that operated under the marketing name of CCG. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 5, 19-25, 49-50). These companies, along with the Phoenix agency office managed by Louis Russo, are located at 1800 Walt Whitman Road in Melville, Long Island. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 5, 19-25, 49-50). Louis Russo was the managing agent for Phoenix from 1992 to 2004, when Phoenix closed its field offices and Louis Russo replaced it with Guardian. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 27-28, 74-77). CBC President Greenstein worked closely with CFM Advisors and had overall responsibility for both CFM Advisors and Comprehensive Employee Pensions (CEP). (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 24). CBC President Michael Russo brought clients from CBC to CFM Advisors and attended meetings with Tobin. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 52; Roberts Decl. ¶ 6 Exh. D, Deposition of James Tobin (Tobin Dep.), pp. 65-67).

13.    EEOC denies that this is a relevant, admissible material fact. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. Defendant's Exhibit G has not been authenticated by someone with personal knowledge, and is undated. EEOC admits that Exhibit G appears to be a copy of part of a page of CFM Advisor's current website.

14.    EEOC denies. Although there is evidence that Tobin had some managerial responsibilities for CFM Advisors, there is substantial evidence that Louis Russo, as the owner, "ran" CFM Advisors as an integrated enterprise along with CBC and other entities. Tobin

4

reported to Louis Russo. (Roberts Decl. ¶ 6 Exh. D, Tobin Dep., pp. 49-50). Louis Russo is and

was the owner and sole shareholder of Defendant CBC, CFM Advisors, and CEP that operated

under the marketing name of CCG. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 5, 19-25, 49-

50). Moreover, CBC President Greenstein worked closely with CFM Advisors and had overall

responsibility for both CFM Advisors and Comprehensive Employee Pensions (CEP). (Roberts

Decl. ¶ 3, Exh. A, L. Russo Dep., p. 24). CBC President Michael Russo brought clients from

CBC to CFM Advisors and attended meetings with Tobin. (Roberts Decl. ¶ 7, Exh. E, Martone

Dep., p. 52). Nicholas Giarrusso, who was on the Phoenix agency payroll, handled human

resource functions for CFM Advisors. *See* EEOC Facts in ¶ 23 below, incorporated by

reference.

15.     EEOC denies. While Martone worked for CFM Advisors, she was also an

employee of CBC for Title VII purposes. Defendant has admitted that Martone was a CBC

employee. Defendant's Exhibit F, "lists of defendant CBC's male and female employees for the

past 10 years," (Declaration of Steven C. Stern (Stern Decl.), ¶ 7), identifies Martone as a CBC

employee. CBC Vice President (and later, President) Michael Russo interviewed and hired

Martone for the position. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 232; Roberts Decl. ¶ 6,

Exh. D, Tobin Dep., p. 50). *See also* EEOC Facts in ¶ 12 above, incorporated by reference.

Martone was hired to eventually assist CBC President Michael Russo with research and

development of 401(k) plans for CFM Advisors. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p.

233).

16.     EEOC denies. Martone did not use the word "employees." Martone testified that

she and Tobin worked for CFM advisors, and that Tobin, Kevin Sweeney, Michael Russo, Louis

Russo and "some of the sales people from CFM Advisors" generated business for CFM

Advisors. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 40). *See also* EEOC Facts in ¶¶ 1, 6, 8 and 15 above and ¶ 17 below, incorporated by reference.

17.    EEOC admits.

18.    EEOC denies that this is a relevant, admissible material fact. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact, and the fact that Phoenix is currently a publicly traded corporation is not a material fact for this motion. Defendant's Exhibit G does not pertain to Phoenix, and appears to be a copy of part of a page of CFM's current website. *See also* EEOC Facts in ¶ 23 below, incorporated by reference, regarding the difference between The Phoenix Companies, Inc. and the Phoenix agency run by CBC owner Louis Russo at CBC's offices.

19.    EEOC denies that this is a relevant, admissible material fact. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact, and facts about the current operating subsidiaries of Phoenix are not material to this motion. Defendant's Exhibit H appears to be a copy of a page from the current website for Phoenix.

20.    EEOC denies that this is a relevant, admissible material fact. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact, and facts regarding when Phoenix was founded are not material to this motion. Defendant's Exhibit H appears to be a copy of a page from the current website for Phoenix. EEOC admits that Exhibit H appears to indicate that Phoenix dates back to 1851.

6

21.    EEOC denies that this is a relevant, admissible material fact. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact, and facts regarding whether Phoenix is currently traded on the New York Stock Exchange are not material to this motion. Defendant's Exhibit H appears to be a copy of a page from the current website for Phoenix. EEOC admits that Exhibit H appears to indicate that Phoenix trades under the symbol "PNX."

22.    EEOC denies that this is a relevant, admissible material fact. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact, and the location of Phoenix's current corporate offices is not material to this motion. Defendant's Exhibit H appears to be a copy of a page from the current website for Phoenix. EEOC admits that Exhibit H appears to indicate that Phoenix dates back to 1851.

23.    EEOC denies. Louis Russo had a contract with Phoenix Life insurance to be a managing agent, with authority to hire employees to work in his agency. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 25, 27-28; Roberts Decl. ¶ 8 Exh. F, Deposition of Nicholas Giarrusso (Giarrusso Dep.) p. 13; Roberts Decl. ¶ 9 Exh. G, Deposition of Donna Greenstein (Greenstein Dep.) p. 110). All of Louis Russo's companies, including Defendant CBC, CFM Advisors, and Phoenix, shared the same office facilities at 1800 Walt Whitman Road in Melville, Long Island. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., pp. 14-15; Roberts Decl. ¶ 3, Exh. A, Exh. C, L. Russo Dep., pp. 30-31; Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 113-114). Defendant CBC, Phoenix, and Louis Russo's other companies shared a common entranceway,

7

restrooms and other office facilities, and receptionist. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 31; Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 113-114).

Nicholas Giarrusso was hired by Louis Russo as an Office Manager for Louis Russo's companies, and was placed on the Phoenix payroll. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., p. 13). Giarrusso was supervised by and directly answered to Louis Russo. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., pp. 17-18). Giarrusso was promoted to Director of Operations. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., p. 18). He functioned in the role as Human Resources person for all of Louis Russo's companies, including Defendant CBC, CFM Advisors and the Phoenix agency. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., pp. 22, 143-144; Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., p. 112). Defendant's employees, pursuant to a common "Anti-Sexual Harassment Policy," were advised to make complaints of sexual harassment to their supervisor or to Giarrusso. (Defendant Exhibit P). Greenstein stated that "everybody" would go to Giarrusso if they had a complaint. (Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., p. 112). Furthermore, the policy is applicable to all employees, whether they worked for CBC, CFM Advisors, CEP or Phoenix. (See Defendant's Exhibit P).

Louis Russo operates his Phoenix agency together with CBC at the CBC offices located at 1800 Walt Whitman Road in Melville, Long Island. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 23-25). *See also* EEOC Facts in ¶¶ 1 and 12 above, incorporated by reference.

24. EEOC denies that this is a material fact relevant to this summary judgment motion. EEOC admits that Louis Russo was not an officer of The Phoenix Companies, Inc., Phoenix Life Insurance Company and Phoenix Investment Partners, Ltd. However, Louis Russo was the Agency Manager of his Phoenix agency. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., p. 13). *See also* EEOC Facts in ¶¶ 1, 12 and 23 above, incorporated by reference.

25.    EEOC denies that this is a material fact relevant to this summary judgment motion. EEOC admits that Louis Russo testified that he reported to a regional Vice President at Phoenix.

26.    EEOC denies that this is a material fact relevant to this summary judgment motion. EEOC admits that Michael Russo testified that he never worked for Phoenix. However, Michael Russo supervised employees on the Phoenix agency payroll who worked at the CBC offices, including Hart. (Roberts Decl. ¶ 10, Exh. H., Hart Dep., pp.171, 303).

27.    EEOC denies that this is a material fact relevant to this summary judgment motion. EEOC admits that Louis Russo testified that Phoenix had its own salary guidelines.

28.    EEOC denies. While Hart worked for the Phoenix agency run by Louis Russo, she was also an employee of CBC for Title VII purposes. Defendant has admitted that Hart was a CBC employee. Defendant's Exhibit F, "lists of defendant CBC's male and female employees for the past 10 years," (Stern Decl., ¶ 7), identifies Hart as a CBC employee. Hart answered an advertisement for a receptionist position in Newsday. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 142). The company's name was not given in the advertisement. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 142). Hart originally filled out paperwork for either CBC or CCG, but eventually she was placed on Phoenix's payroll. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 158). Hart was the receptionist for the main phone line for all of Louis Russo's companies and she received and fielded calls for CBC, CFM Advisors, CEP, and Phoenix. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 301). Hart assumed CFM Advisors, CEP, CBC, CCG and Phoenix to be the "same thing." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 301). Hart was often supervised by different people including CBC owner Louis Russo, CBC President Michael Russo and CBC Vice President Susan Nally. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 52-53, 166, 190, 303-305).

9

Hart eventually became Louis and Michael Russo's assistant and typed letters and performed other administrative duties for the Russos, starting in approximately in July or August of 2002, while still on Phoenix' payroll. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 171, 303). Her responsibilities for the other companies continued to increase and she assumed greater responsibilities as Louis and Michael Russo's assistant, including re-pricing claims. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 176). *See also* EEOC Facts in ¶¶ 1, 12 and 23 above, incorporated by reference.

29.    EEOC denies. The sexual harassment occurred during the time Hart worked for Defendant CBC and Phoenix. Hart was sexually harassed by CBC owner Louis Russo and CBC President Michael Russo throughout her tenure, and she was also subjected to a hostile working environment as she was forced to observe Louis Russo and Michael Russo sexually harassing other women at the Defendant's workplace. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 147-148, 175-176, 180-181); *See also* EEOC Facts in ¶¶ 1, 12, 28 and 23 above, incorporated by reference.

30.    EEOC denies. While Angelone worked for the Phoenix agency run by Louis Russo, she was also an employee of CBC for Title VII purposes. Defendant has admitted that Angelone was a CBC employee. Defendant's Exhibit F, "lists of defendant CBC's male and female employees for the past 10 years," (Stern Decl., ¶ 7), identifies Angelone as a CBC employee and supervisor. Angelone answered an ad in the newspaper in March of 2001 for the position of Office Manager at CCG. According to Angelone, the ad did not mention Phoenix. (Roberts Decl. ¶ 11, Exh. I, Deposition of Francine Angelone (Angelone Dep.) 142-143). Angelone faxed her resume to the number given for CCG. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 143). She was interviewed by Nicholas Giarrusso, Michael Russo, and Louis Russo.

10

(Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 145-146).  Angelone reported to Louis Russo and he frequently told her that he was her "boss" and that he would "fucking fire" her.  (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 41, 96, 152-153, 161-162).  Indeed, Angelone testified that on the first day of her employment she quit because Louis Russo embarked on a tirade, yelling and cursing at her; when she walked out, Louis Russo called her at home and begged her to come back to work.  (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 82-86).

Angelone served as the office manager for all of the companies, including CBC, CFM and the Phoenix agency.  (Roberts Decl. ¶ 4, Exh. B, M. Russo Dep., p. 145; Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., p. 57; Roberts Decl. ¶ 6, Exh. D, Tobin Dep., p. 104; Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 95; Roberts Decl. ¶ 12, Exh. J, Deposition of Mario Jordon (Jordon Dep.) pp. 9, 157; Roberts Decl. ¶ 13, Exh. K, Deposition of Linda O'Connell (O'Connell Dep.) pp. 5, 20; Roberts Decl.¶ 14, Exh. L, Deposition of Irene Marra (Marra Dep.) pp. 5, 13; Roberts Decl.¶ 17, Exh. M, Deposition of Lorraine Piazza (Piazza Dep.) pp. 5, 23-24; Roberts Decl.¶ 18, Exh. N, Deposition of Arthur Abrahamsen (Abrahamsen Dep.) p. 26).

31.   EEOC denies.  The sexual harassment occurred while Angelone worked for Defendant CBC and Phoenix.  Angelone was sexually harassed almost daily by Louis Russo and she was also subjected to a hostile working environment as she was forced to observe Louis Russo and Michael Russo sexually harass other women at Defendant's workplace.  (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 13-15, 24, 96-97, 157-162); *see also* facts set forth in ¶¶ 1, 12, 23, and 30 above, incorporated by reference.

## II.   BACKGROUND AND HISTORY

32.   EEOC denies.  Defendant constructively discharged Addeo by creating and maintaining such an intolerably hostile work environment, where she was harassed on a "daily

11

basis," that she was forced to leave her employment at CBC. (Roberts Decl. ¶ 17, Exh. O,

Deposition of Jean Marie Addeo (Addeo Dep.), p.198). EEOC admits that Addeo and Nally left

their employment at CBC on the same day in May 2002. CBC President Michael Russo made

constant sexually explicit and derogatory comments to Addeo, inappropriately commented on

her body, stared at Addeo's and other female employee's breasts and made vulgar comments

about them, grabbed his crotch and made sexual gestures in front of Addeo and other female

employees, touched her in an unwelcome manner, frequently talked about sexual acts in a vulgar

manner, and disparaged Addeo's marital relationship with her husband. (Roberts Decl. ¶ 17,

Exh. O, Addeo Dep., pp. 105, 112, 118-119, 133-137, 153-154, 158-159, 167-170; Roberts Decl.

¶ 21, Exh. S, Addeo's verified Charge of Discrimination filed with EEOC; Roberts Decl. ¶ 6,

Exh. D, Tobin Dep., p. 22; Roberts Decl. ¶ 18, Exh. P, Deposition of Susan Nally (Nally Dep.)

pp. 64, 70, 72-76, 88). CBC owner Louis Russo also subjected Addeo and other female

employees to a sexually hostile work environment, made sexually vulgar and inappropriate

comments to Addeo on a frequent basis, and treated her in a demeaning and even physically

threatening manner that he did not use with male workers. Nally testified that both she and

Addeo were intimidated by Louis Russo. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 74-76,

160-162; Roberts Decl. ¶ 18, Exh. P, Nally Dep., pp. 60-62, 88, 142).

Michael Russo told Addeo that he wanted to "slam [a female client] down on the

conference table," and then he proceeded to do an "insulting, crude pelvic thrust imitating having

sex with someone." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 137). Michael Russo would

grab his crotch in front of Addeo and female employees while talking about people and say "he

can get it right here" or "he can take this." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 167-

170). He told Addeo to get a female client on the phone and tell the client that he would be her

12

date, and made pelvic thrusting gestures. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 167-170).

Michael Russo told Addeo that his wife was not "physically his type" because "his type is more . . . meatier, darker you know Italian Latin kind of woman with big boobs." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 134). When Addeo complained to Michael Russo that the office was cold and employees where complaining about it, Michael Russo looked at her breasts and stated, "Yeah, you know what JM, I can see that you're cold." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 135). At a management meeting, with Addeo, Giarrusso and Nally present, Michael Russo commented about a "big, black girl in customer service with...big titties... she must have nipples the size of Susan's head." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 136, 154; Roberts Decl. ¶ 18, Exh. P, Nally Dep., p. 64). He referred to a woman's breasts as "headlights" and a woman's genitals as "camel toe" in front of Addeo. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 135-137; 152-154).

In Addeo's presence, Michael Russo told a female employee that the man that employee dated was "just going to bend you over..." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 135). Michael Russo referred to brokers as "cocksuckers" and said that a female broker was a "cunt" and insinuated that the female broker "was sleeping with the chairman of the company." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 135). He also made disparaging comments about Addeo's body, particularly her size and weight, telling her, for example, that food she was "[eating] is going to go right to your ass" and made similar comments about the weight of female employees, but not male employees. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., 126-127,133); Roberts Decl. ¶4, Exh. D, Tobin Dep., pp. 22).

Michael Russo also subjected Addeo to unwanted touching. Michael Russo drove Addeo home from a client meeting, and when they arrived at Addeo's home, he lunged across the car into the front passenger section, put his head in her neck and his left arm across Addeo, and pretended to kiss her in front of her neighbor. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 105-112). On another occasion, Michael Russo put his arm around Addeo in front of a co-worker and when Addeo did not reciprocate the hug he barraged her with insults, such as "you don't even hug me back (sic) and you call yourself Italian, you're a cold fish...I feel bad for your husband. You probably don't give him enough sex." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 134). Michael Russo told Addeo that he felt sorry for her husband because she probably "didn't give it up enough" and that "men really liked blow jobs" and that Addeo probably didn't "do that either." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 134). Michael Russo constantly referred to Addeo's husband Craig as a "fag," "homo" and "pussy." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 133, 158-159).

Addeo testified that CBC owner Louis Russo also engaged in such conduct: On multiple occasions, Louis Russo told Addeo that he was naked while calling her from his hot tub. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 160). He often circulated inappropriate jokes at management meetings. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 160). One e-mail sent by Louis Russo contained a picture of naked women comparing an Afghani woman's crotch to an American female model's crotch. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 160-162). Louis Russo and Michael Russo often "elbowed and joked with each other" in Addeo's presence about the shirt that a female employee who had a large chest would wear, saying that "Jen can keep wearing those little tops." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 157-158). Louis Russo told Addeo that she was "so stupid [she] could fuck up a wet dream..." (Roberts Decl. ¶ 17, Exh.

14

O, Addeo Dep., p. 160). Louis Russo called women employees "fucking bitches." (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 160). Louis Russo often referred to Greenstein as a "dumb broad" or a "dumb bitch," and told Addeo to "[g]et that dumb bitch on the phone." (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 160). Louis Russo constantly called Addeo a "fucking baby" and treated her in a demeaning manner that he did not use with male employees. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 74-76, 162-163). Nally testified that she and Addeo were intimidated by Louis and Michael Russo. (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 88).

Addeo complained to Michael Russo, Louis Russo, Greenstein, Nally and Giarrusso about Michael Russo's inappropriate and sexually offensive behavior, but she was told to brush it off and ignore Michael Russo. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 64-81, 84, 94-97, 98-100, 113-119). Addeo left "[a]fter spending months dealing with the situation and being beaten down…" (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 59). Louis Russo told Addeo that if she didn't like what he was saying, she "could pack [her] shit and get the fuck out of the building." (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 60).

33.     EEOC denies. Addeo was constructively discharged by Defendant CBC and was forced to leave her employment with CBC because Defendant CBC created and failed to remedy a sexually hostile environment. *See* EEOC Facts in ¶ 32 above, incorporated by reference. Addeo admits that she complained about the hostile environment to Nally and that they both decided to resign on the same day because of it. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., 59, 94-96; 211). Addeo complained to Michael Russo, Louis Russo, Greenstein, Nally and Giarrusso about Michael Russo's inappropriate and sexually offensive behavior, but she was told to brush it off and ignore Michael Russo. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 64-81, 84, 94-97, 98-100, 113-119). Addeo left "[a]fter spending months dealing with the situation and

15

being beaten down…" (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 59). Louis Russo told Addeo that if she didn't like what he was saying, she "could pack [her] shit and get the fuck out of the building." (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 60).

34.    EEOC denies. *See* EEOC Facts in ¶ 32 above, incorporated by reference.  Addeo admits that she complained about the hostile environment to Nally and that they both decided to resign on the same day because of it. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., 59, 94-96; 211).

35.    EEOC denies that this is a material fact relevant to this summary judgment motion. EEOC admits that Addeo and Nally consulted with an attorney named Robert Bursky before Addeo filed her Charge of Discrimination with EEOC.

36.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion.  Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact.  Nally's opinion that she and Addeo were "mistaken" in believing that they had been subjected to an actionable hostile work environment is not relevant or admissible, and Nally is not an expert regarding sexual harassment.  Defendant did not train its employees regarding sexual harassment issues. (Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 47-50; Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., pp. 43-44).  EEOC denies that Addeo was mistaken in believing that she had an actionable sexual harassment claim; Defendant does not claim that there is insufficient evidence regarding EEOC's claims that Defendant subjected Addeo to a sexually hostile work environment. *See* Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Def. Memo), pp. 1, 4-10.

37.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion, and EEOC denies the allegation.  Addeo testified that after she met with

16

Attorney Robert Bursky, she made a list of all instances at work that supported her claim of
sexual harassment. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 38). Addeo then used that same
list when drafting her Charge with EEOC, which was duly served on Defendant. (Roberts Decl.¶
17, Exh. O, Addeo Dep., pp. 17-20). *See also* EEOC Facts in ¶ 38 below, incorporated by
reference.

      38.    EEOC denies that this is an admissible material fact relevant to this summary
judgment motion. Although Nally testified that she was not able to come up with any incidents
that she believed were sexually harassing (Roberts Decl.¶ 18, Exh. P, Nally Dep., p.125), she
could not recall whether Addeo's list to Bursky contained incidents of sexual harassment.
(Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 125).  Further, Nally was present when Michael
Russo stated that a female employee's nipples were as big as her head. (Roberts Decl.¶ 18, Exh.
P, Nally Dep., p. 64). While in a management meeting, Louis Russo called Nally's staff, which
was mostly women, a "bunch of dumb bitches." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 60).
Nally told Louis Russo that she did not appreciate him calling her female staff a "bunch of dumb
bitches." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 60).

      Nally testified that Addeo spoke to Michael Russo about his negative comments about
her weight and size. (Roberts Decl.¶ 18, Exh. P, Nally Dep., pp. 70 – 74). Nally recalls hearing
Michael Russo call Addeo's husband a "fag." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 76).
Nally testified that Laura Hart told her that Michael Russo said he would "fuck me [Hart] and I'd
enjoy every minute of it." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 81). Nally testified that she
and Addeo were intimidated by Louis and Michael Russo. (Roberts Decl.¶ 18, Exh. P, Nally
Dep., p. 88). Nally also testified that she would find it offensive if Louis Russo had called her a
dumb bitch. (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 142).

39.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion, and EEOC denies the allegations. *See also* EEOC Facts in ¶ 39 above, incorporated by reference.

40.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. EEOC admits that Addeo told Zwerling some information about her conversation with Bursky.

41.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. EEOC also denies the allegation. Addeo testified that she told Zwerling that she met with Bursky and he said that it would be "very, very difficult given the circumstances of the people that still work there and not having hard evidence." (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 347).

42.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. EEOC also denies the allegation. Addeo testified that she told Zwerling that she met with Bursky and he said that it would be "very, very difficult given the circumstances of the people that still work there and not having hard evidence." (Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 347).

18

43.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. Addeo told Renee Fanning that she had consulted a lawyer, but Fanning did not identify the attorney. (Roberts Decl. ¶ 20, Exh. R, Deposition of Renee Fanning (Fanning Dep.) p. 147). Addeo spoke with more than one attorney. (Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 27- 28).

44.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. *See also* EEOC Facts in ¶ 41 above, incorporated by reference.

45.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact.   *See also* EEOC Facts in ¶ 41 above, incorporated by reference.

46.     EEOC denies that Defendant's Exhibit I is a complete copy of the EEOC Charge of Discrimination filed by Addeo. A complete copy of Addeo's verified EEOC Charge is annexed as Exhibit S to Roberts Decl., ¶ 21.  EEOC admits that Addeo filed the EEOC Charge in February 2003.

47.     EEOC admits.

48.     EEOC admits.

49.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC's complaint alleged that Addeo, Hart and "similarly situated women"

19

were subjected to sexually harassing conduct by Louis and Michael Russo while they worked at CBC. (Defendant Exhibit A). Subsequently, EEOC learned of and identified additional persons with knowledge who EEOC believed may be claimants, pursuant to the directive of Magistrate Judge James Orenstein to "provide the names of all persons with the scope o[f] Rule 26(a)(1). . ." (Roberts Decl. ¶ 22, Exh. T, Order by Magistrate Judge James Orenstein dated November 23, 2004; Defendant Exhibit K).

50. EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC admits that it properly notified Defendant of additional persons with knowledge who EEOC believed may be claimants, pursuant to the directive of Magistrate Judge James Orenstein to "provide the names of all persons with the scope o[f] Rule 26(a)(1). . ." (Roberts Decl. ¶ 22, Exh. T, Order by Magistrate Judge James Orenstein dated November 23, 2004; Defendant Exhibit K).

51. EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC admits that it properly notified Defendant of additional persons with knowledge who EEOC believed may be claimants, pursuant to the directive of Magistrate Judge James Orenstein to "provide the names of all persons with the scope o[f] Rule 26(a)(1). . ." and that EEOC identified Martone, Angelone, Donna Fornuto and Terry Brimlow. (Roberts Decl. ¶ 22, Exh. T, Order by Magistrate Judge James Orenstein dated November 23, 2004; Defendant Exhibit K).

52. EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See* EEOC Facts in ¶ 51 above, incorporated by reference. EEOC admits that it removed Fornuto and Brimlow as claimants.

53.   EEOC denies that this is an admissible material fact relevant to this summary

judgment motion. *See* EEOC Facts in ¶ 51 above, incorporated by reference. Defendant

mischaracterizes the transcript it cites in support of its allegation, inasmuch as the transcript cited

by Defendant indicates:

> The two names that we provided to the court were people that, after we
> filed our complaint, we asked the women, is there anybody else that you know of?
> We're filing our complaint, we want to make sure that we have a class of women,
> if there is such a class, and these are two women who no longer work for CBC
> that Jean Marie Addeo said . . . This woman may have been also sexually
> harassed, and that's how we found out about her. So we - -
> THE COURT:        So on the basis of Ms. Addeo and Ms. Hart telling
> you, here's other people who may be claimants, that you identified as claimant.
> MS. ROBERTS:        Right. Exactly.
>
> (Defendant Exhibit L at 40, lines 8-22).

54.   EEOC denies that this is an admissible material fact relevant to this summary

judgment motion. Defendant mischaracterizes the transcript it cites in support of its allegation.

*See* EEOC Facts in ¶ ¶ 51 and 53 above, incorporated by reference, and Defendant Exhibit L at

39-44.

55.   EEOC denies that this is an admissible material fact relevant to this summary

judgment motion. Defendant mischaracterizes the transcript it cites in support of its allegation.

*See* EEOC Facts in ¶ ¶ 51 and 53 incorporated by reference, and Defendant Exhibit L at 39-51.

EEOC stated that "Ms. Brimlow has indicated that she does not wish to be a part of this suit."

(Defendant Exhibit L at 50, lines 1-2). EEOC stated that it had been difficult to find Fornuto to

talk with her. (Defendant Exhibit L at 50-51).

56.   EEOC denies that this is an admissible material fact relevant to this summary

judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ.

Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged

statement of fact. In addition, Defendant mischaracterizes Greenstein's testimony about an alleged conversation Greenstein had with Brimlow. Greenstein did not testify that Brimlow was furious at EEOC. (Defendant Exhibit II, Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 121-122).

57.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact.

58.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) and has not cited evidence which would be admissible in support of its alleged statement of fact. In addition, Defendant mischaracterizes Greenstein's testimony about an alleged conversation Greenstein had with Brimlow. Greenstein did not testify that Brimlow ever mentioned EEOC. Defendant Exhibit II, Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 121-122).

59.     EEOC denies. EEOC admits that it spoke with the press on July 21, 2004 not July 28, 2004 as Defendant alleges; and Addeo and Hart were present when EEOC spoke with the press and discussed the allegations in EEOC's complaint, but did not hold a conference. (Roberts Decl., ¶ 32).

60.     EEOC denies. The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward. (Def. Exhibit M; Roberts Decl., ¶ 4, Exh. B, M. Russo Dep., p. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M, Piazza Dep., p. 19; Roberts Decl., ¶ 18, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh. X,

22

Deposition of Jobert Aramburo (Aramburo Dep.), p. 79). The lawsuit was filed by Defendant and served on Addeo the day before she was to attend mediation in EEOC's lawsuit, in unlawful retaliation against Addeo for engaging in protected activity under Title VII and participating in EEOC's lawsuit. (EEOC Facts in ¶¶ 62, 131-134; 193-196, incorporated by reference). Michael Russo is the President of CBC and alleges harm to the business. (Defendant's Fact ¶ 8; Defendant Exhibit M).

 61. EEOC denies. The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward. (Def. Exhibit N; Roberts Decl., ¶ 4, Exh. B, M. Russo Dep., pp. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M, Piazza Dep., p. 19; Roberts Decl., ¶ 20, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh. X, Aramburo Dep., p. 79). The lawsuit was filed by Defendant and served on Hart the day before Hart was scheduled to attend mediation in EEOC's lawsuit, in unlawful retaliation against Hart for engaging in protected activity under Title VII and participating in EEOC's lawsuit. (EEOC Facts in ¶¶ 62,131-134;193-196, incorporated by reference). Michael Russo is the President of CBC and alleges harm to the business. (Defendant's Fact ¶8; Defendant Exhibit N).

 62. EEOC denies. The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward. (Def. Exhibit M; Roberts Decl., ¶ 4, Exh. B, M. Russo Dep., pp. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M, Piazza Dep., p. 19; Roberts Decl., ¶ 20, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh. X, Aramburo Dep., p. 79). The lawsuits were filed by Defendant and served on Addeo and Hart the day before they were to attend mediation in EEOC's lawsuit, in unlawful retaliation against Addeo and Hart for engaging in protected activity under Title VII and participating in EEOC's lawsuit. (EEOC's facts in ¶¶ 131-134; 193-196).

23

Michael Russo is the President of CBC and the complaint signed and filed by the CBC in-house counsel alleges harm to the business. (Defendant's Fact ¶ 8; Defendant Exhibit M and Exhibit N). EEOC filed its complaint and spoke with the press on July 21, 2004, not July 28, 2004. (*See* Defendant Exhibit A; Roberts Decl., ¶ 32). In August, 2004, Defendant requested mediation. The mediation session was originally scheduled for November 10, 2004, but defense counsel requested that the mediation be rescheduled to November 17, 2004. (Roberts Decl. ¶ 23, Exh. U, Letter dated September 15, 2004 from Monique J. Roberts; Roberts Decl. ¶ 24, Exh. V, Defendant's letter dated September 15, 2005). The parties and mediator agreed to Defendant's request to adjourn the mediation to November 17, 2004. (Roberts Decl. ¶ 25, Exh. W, Robert Lewis letter dated September 24, 2004 and Defendant's letter dated September 23, 2004). Defendant, through its in-house attorney Anthony Ward, waited until one day before the mediation session, where Hart and Addeo were to be present, to serve each woman with Defendant's lawsuits, seeking monetary damages in each lawsuit of $7.5 million for alleged business losses, in a further attempt to intimidate and harass Hart and Addeo for their continued participation in EEOC's lawsuit. (Defendant Exhibit M, N). Defendant's retaliatory lawsuits were filed one day before mediation. EEOC requested and was granted leave to amend its Complaint to add this retaliation claim. (Roberts Decl. ¶ 43, Exh. NN, EEOC's Amended Complaint).

63.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. The unsworn statement of Renee Fanning is not in evidentiary form and violates the requirements of Local Civil Rule 56.1 (d) and Fed. R. Civ. Pro. 56 (e). The statements speak for themselves and are full of inadmissible opinions, inadmissible allegations not based on personal knowledge, and other allegations that are not relevant and are

24

inadmissible.  (Defendant Exhibit O).  Defendant's Exhibit O does not establish that "many"

female employees "came forward."  Defendant's Exhibit O is merely statements from five

current employees of Defendant CBC (two of whom are current officers) and none of the

statements indicate that the women "came forward" as opposed to being solicited by their

employer to provide such statements.  Indeed, Nally testified that she and Addeo were

intimidated by Louis and Michael Russo.  (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 88; Roberts

Decl.¶ 17, Exh. O, Addeo Dep., p. 164).  Moreover, Jobert Aramburo, a current CBC employee,

who was interviewed by Giarrusso and Louis Russo and was hired by Giarrusso to work at CBC,

testified that she did not draft the affidavit that Defendant relies on in Defendant's Exhibit O and

that she did not know who drafted the affidavit, but it was notarized by "in-house attorney"

Anthony Ward.  (Roberts Decl. ¶ 26, Exh. X, Aramburo Dep., pp. 79, 90-91).  Aramburo further

testified that she never read Addeo's Charge of Discrimination and only "heard" comments

about it in the office.  (Roberts Decl. ¶ 26, Exh. X, Aramburo Dep. p. 91).

      64.    EEOC denies that this is an admissible material fact relevant to this summary

judgment motion.  *See* EEOC Facts in ¶ 63 above, incorporated by reference.  Many of the

opinions in the statements are contradicted by deposition testimony of the persons making the

statements.  For example, Nally was present when Michael Russo stated that a female

employee's nipples were as big as her head.  (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 64).

While in a management meeting, Louis Russo called Nally's staff, which was mostly women, a

"bunch of dumb bitches."  (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 60).  Even though Nally

told Louis Russo that she did not appreciate him calling her female staff a "bunch of dumb

bitches." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 60).  Nally testified that Addeo spoke to

Michael Russo about his negative comments about her weight and size.  (Roberts Decl.¶ 18, Exh.

P, Nally Dep., pp. 70-74). Nally testified that Laura Hart told her that Michael Russo said he would "fuck her [Hart] and she would love every minute of it." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 81). Nally testified that she and Addeo were intimidated by Louis and Michael Russo. (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 88; Roberts Decl.¶ 17, Exh. O, Addeo Dep., p. 164). Nally also testified that she would find it offensive if Louis Russo had called her a dumb bitch. (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 142).

Greenstein, a current employee and former CBC President who now works in Florida, denied that she was ever sexually harassed by Louis Russo. (Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 18-19; 48- 49). John Bohan, a former employee, however, testified to witnessing Louis Russo scream at Greenstein calling her a "dumb fuckin' cunt" and "a dumb bitch" while shaking a phone inches from her face. (Roberts Decl. ¶ 27, Exh. Y, Deposition of John Bohan (Bohan Dep.) 108-111).

Aramburo testified that Michael Russo never told her that he liked the color of her pink thong. (Roberts Decl. ¶ 26, Exh. X, Aramburo Dep., p. 75). Michael Russo, however, testified that he did, indeed, tell Aramburo that he liked the pink thong she was wearing and that he was able to see Aramburo's underwear because it showed a little over her pant waist line. (Roberts Decl. ¶ 4, Exh. B, M. Russo Dep., pp. 122-123).

65.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See* EEOC Facts in ¶ ¶ 63 and 64 above, incorporated by reference.

66.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Defendant has admitted that the people who signed such statements were Defendant's employees. (Defendant's Fact ¶ 66), including Francine Angelone. (Defendant Exhibit P). EEOC denies that the statements (Defendant Exhibit P) cited by Defendant establish

26

that the CBC employees who signed the statement were in fact never the subject of any sexual

harassment and never made any complaint of sexual harassment, because such statements were

unsworn and there is evidence that CBC employees, as a result of the Charges filed against

Defendant with EEOC, were forced into signing such statements. (Roberts Decl. ¶ 11, Exh. I,

Angelone Dep., pp. 60-61).

    67.    EEOC denies. There is substantial evidence that Linda O'Connell ("O'Connell")

was also employed by Defendant CBC. Defendant's Exhibit F, "lists of defendant CBC's male

and female employees for the past 10 years," (Stern Decl., ¶ 7) identifies O'Connell as one of

Defendant's female employees. She was not in a position to witness the harassment that Addeo,

Martone, Hart and Angelone experienced. (Roberts Decl. ¶ 13, Exh. K, O'Connell Dep., pp. 18-

22).

    68.    EEOC admits. *See* EEOC Facts in ¶ 1 above, incorporated by reference.

    69.    EEOC admits. S*ee* EEOC Facts in ¶ 67 above, incorporated by reference,

regarding the limited contact and exposure O'Connell had with claimants.

    70.    EEOC denies that this is an admissible material fact relevant to this summary

judgment motion. In addition, O'Connell testified that on more that one occasion she has

witnessed Angelone become very upset because Louis Russo screamed at Angelone. (Roberts

Decl. ¶ 13, Exh. K, O'Connell Dep., pp. 20-21). *See* EEOC Facts in ¶ 67, incorporated by

reference, regarding the limited contact and exposure O'Connell had with claimants.

    71.    EEOC denies. *See* EEOC Facts in ¶ 67, incorporated by reference, about the

limited contact and exposure O'Connell had with claimants and the limited time she spent in the

workplace. In addition, her inadmissible opinion is contradicted by substantial evidence that

women were treated differently than men, and that Defendant yelled at women in a manner that

27

created a sexually hostile environment for women. For example, Louis Russo called Nally's staff, which was mostly women, a "bunch of dumb bitches." (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 60). John Bohan, a former employee, testified to witnessing Louis Russo scream at Donna Greenstein calling her a "dumb fuckin' cunt" and "a dumb bitch" while shaking a phone inches from her face. (Roberts Decl. ¶ 27, Exh. Y, Bohan Dep., pp. 108-111). Nally testified that Louis Russo never called the male employees a "dumb bitch." (Roberts Decl.¶ 18, Exh. P, Nally Dep., pp. 140). Bohan also testified that Louis Russo never called him a "cunt," but that he remembers a specific incident when a female employee was called a "stupid ass cunt" via intercom by Louis Russo and that Louis Russo often used the word "cunt" either in a woman's presence or when referring to a woman. (Roberts Decl. ¶ 27, Exh. Y, Bohan Dep., pp. 9, 52, 80-82, 94-95).

72.    EEOC admits. *See* EEOC Facts in ¶ 67, incorporated by reference, about the limited contact and exposure O'Connell had with claimants and the limited time she spent in the workplace.

73.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion.

74.    EEOC admits.

75.    EEOC denies. Piazza's cubicle was forty (40) feet from Louis and Michael Russo's offices. (Roberts Decl. ¶ 15, Exh. M, Piazza Dep., pp. 15-16).

76.    EEOC admits.

77.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. Piazza began working for CBC after Addeo and Hart filed their Charges of Discrimination with the EEOC. (Roberts Decl. ¶ 15, Exh. M, Piazza Dep., p. 5). Indeed, Piazza

never even met Addeo or Martone. (Roberts Decl. ¶ 15, Exh. M, Piazza Dep., p. 17).  She hardly
spoke to Angelone and had limited contact with Hart.  (Roberts Decl. ¶ 15, Exh. M, Piazza Dep.,
pp. 16-17; 23-24).

78.     EEOC denies that this is an admissible material fact relevant to this summary
judgment motion.  *See also* EEOC Facts in ¶ 77 above, incorporated by reference.

79.     EEOC denies that this is an admissible material fact relevant to this summary
judgment motion.  *See also* EEOC Facts in ¶ 77 above, incorporated by reference.

80.     EEOC denies that this is an admissible material fact relevant to this summary
judgment motion.  *See also* EEOC Facts in ¶ 77 above, incorporated by reference, regarding
Piazza's limited contact and exposure with the claimants.  In addition, her inadmissible opinion
is contradicted by substantial evidence that women were treated differently than men, and that
Defendant yelled at women in a manner that created a sexually hostile environment for women.
*See also* EEOC Facts in ¶ 71 above, incorporated by reference.

81.     EEOC denies.  There is substantial evidence that Barbara Otten ("Otten") was
also employed by Defendant CBC.  Defendant's Exhibit F, "lists of defendant CBC's male and
female employees for the past 10 years," (Stern Decl., ¶ 7) identifies Otten as one of Defendant's
female employees.  Otten had limited contact or exposure to claimants Addeo, Hart, Angelone,
and Martone and was not in a position to witness the harassment that Addeo, Martone, Hart and
Angelone experienced.  (Roberts Decl. ¶ 28, Exh. Z, Deposition of Barbara Otten (Otten Dep.)
pp. 21, 23-24, 30-31).  Otten was not a manager during the period of time that Addeo, Angelone
or Martone worked there and she did not attend management meetings where Angelone or
Addeo were present and where much of the harassment occurred.  (Roberts Decl. ¶ 28, Exh. Z,
Otten Dep., pp. 23, 30-31; Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 6, 98; Roberts Decl. ¶ 11,

29

Exh. I, Angelone Dep., pp. 142-143). Otten never worked with Hart or Martone (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., pp. 25-27, 32).

82.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See also* EEOC Facts in ¶ 81 above, incorporated by reference. Otten was not a manager during the period of time that Addeo, Angelone or Martone worked there, nor did she attend management meetings. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., pp. 23-24, 30-31).

83.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. In addition, her inadmissible opinion is contradicted by substantial evidence that women were treated differently than men, and that Defendant yelled at women in a manner that created a sexually hostile environment for women. *See also* EEOC Facts in ¶ 71 above, incorporated by reference. Otten testifies that she was not sure whether a man calling a woman a "dumb broad" was sexually harassing conduct. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., p. 39). Otten testified that if a man were to call a woman a "fucking bitch" in the workplace she would not consider that sexual harassment. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., p. 39).

84.     EEOC denies. When asked for how long her cubicle was "right outside" Louis Russo's office, Otten testified that her cubicle was not "right outside" Louis Russo's office for long; her cubicle eventually moved. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., p. 8).

85.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See also* EEOC Facts in ¶¶ 81 and 84 above, incorporated by reference, regarding Otten's limited opportunity to "overhear" Louis Russo.

86.     EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See also* EEOC Facts in ¶ 83 above, incorporated by reference.

30

87.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion.

88.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See also* EEOC Facts in ¶¶ 81 and 84 above, incorporated by reference, regarding Otten's limited opportunity to "overhear" Louis Russo and her limited contact with claimants. Otten testified that there were times when she and Louis Russo would not be in the office at the same time. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., p. 21). There is substantial evidence that Louis Russo often used the word "cunt" in a female employee's presence or to refer to a female employee, and called a female employee a "stupid ass cunt" over the intercom. Roberts Decl. ¶ 27, Exh. Y, Bohan Dep., pp. 9, 52, 80-82, 94-95).

89.    EEOC admits. This is further evidence that Defendant CBC was an integrated enterprise. Although Defendant refers to Otten as a CEP employee, she was also an employee of Defendant CBC. *See* EEOC Facts in ¶ 81 above, incorporated by reference.

90.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. In addition, her inadmissible opinion is contradicted by substantial evidence that women were treated differently than men. Otten testified that she wasn't sure whether a man calling a woman a "dumb broad" was sexually harassing conduct. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., p. 39). Otten testified that if a man were to call a woman a "fucking bitch" in the workplace she would not consider that sexual harassment. (Roberts Decl. ¶ 28, Exh. Z, Otten Dep., p. 39).

91.    EEOC denies that this is an admissible material fact relevant to this summary judgment motion. *See also* EEOC Facts set forth in ¶ 64 above, incorporated by reference.

III.   **CLAIMANT LAURA HART**

92.    EEOC denies. In addition to the four incidents that Defendant listed in its

Statement of Facts paragraphs Nos. 93, 94, 95, and 98, there is a tremendous amount of

additional evidence that Defendant CBC subjected Hart to a sexually hostile environment

consisting of severe and pervasive sexual harassment toward her and other females on a daily

basis. (Defendant Exhibit J; Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 101). CBC's President,

Michael Russo invited Hart to "sit on [his] lap" on numerous occasions. (Roberts Decl. ¶ 10,

Exh. H, Hart Dep., pp. 49, 101). Michael Russo requested that Hart "suck his dick under the

table." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 76). Michael Russo, on separate occasions,

invited Hart to kiss him or "make out" with him in the corner. (Roberts Decl. ¶ 10, Exh. H, Hart

Dep., p. 77). Michael Russo told Hart that she was "so stupid, [she] could fuck up a wet dream."

(Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 108-109). Michael Russo invited Jobert Aramburo

to accompany him to the bathroom so they could play "fireman." (Roberts Decl. ¶ 10, Exh. H,

Hart Dep., p. 87). Aramburo told Hart that Michael Russo saw her thong above the waist of her

pants and kept saying "pink, that's the color thong you're wearing." (Roberts Decl. ¶ 10, Exh.

H, Hart Dep., p. 91; Roberts Decl. ¶ 4, Exh. B M. Russo Dep., pp. 122-123). Michael Russo

frequently called Hart a "fucking idiot." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 80). Michael

Russo told Hart that he would "fuck [her] and [she] would enjoy every minute of it." (Roberts

Decl. ¶ 10, Exh. H, Hart Dep., p. 51; Roberts Decl. ¶ 4, Exh. B, M. Russo Dep., p. 117). This

incident was witnessed by Angelone, who testified that Hart was very upset by it. (Roberts Decl.

¶ 11, Exh. I, Angelone Dep., pp. 47, 50-52). Nally also testified that Hart told her about this

incident. (Roberts Decl.¶ 18, Exh. P, Nally Dep., p. 81).

32

Hart testified that she was subject to sexual harassment by the owner of Defendant CBC, Louis Russo. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 82). Louis Russo treated Hart differently than he treated men. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 82). Louis Russo would demand that Hart get his breakfast or coffee by saying, "get my fuckin' breakfast." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 83). Louis Russo never talked this way to the male employees. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 83).

93.    EEOC admits.

94.    EEOC admits.

95.    EEOC denies. Michael Russo subjected Hart to sexual harassment when he asked her to "come sit on his lap." Hart did not testify that Russo was "joking."(Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 31). Michael Russo asked Hart to sit on his lap numerous times, indicating that whatever task she had to do would be "easier" and that they could both have "a little fun." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 49). Hart complained to Michael Russo that she did not like it when he invited her to "sit on [his] lap." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 103).

96.    EEOC denies. Michael Russo gave Hart "the finger" "all the time." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 54). Hart testified that, "I gave Michael Russo the finger after he gave me the finger, told me to go fuck myself." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 54-55). After this exchange, Michael Russo stated that he would fuck Hart and she would love every minute of it. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 55-57; Roberts Decl. ¶ 4, Exh. B, M. Russo Dep., p. 117).

97.    EEOC admits.

33

98.    EEOC denies. Hart testified that she did not have any recollection of giving Michael Russo "the finger," but remembers him telling her he'd fuck her and she would love every minute of it. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 58).

99.    EEOC denies. See response to paragraph No. 92, above, hereby incorporated by reference.

100.    EEOC denies. Hart testified that CBC owner Louis Russo "never said anything sexual towards me. I do feel, however, that he treated me different as a woman." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 81). *See also* EEOC Facts in ¶ 92 above, incorporated by reference.

101.    EEOC admits.

102.    EEOC denies in that it implies Hart welcomed the sexually harassing and discriminatory actions of Louis Russo because she joked with him at times.

103.    EEOC denies in that it implies Hart welcomed the sexually harassing conduct of CBC President Michael Russo because she joked with him at times. Indeed, Hart complained to Michael Russo on several occasions that he intimidated her, that she did not like the way he spoke to her, she did not like when he asked her to sit on his lap and she did not like being called a "fucking asshole." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 102 – 103). Michael Russo knew that his conduct towards Hart was unwelcome: once when he asked Hart to sit on his lap he said "oh yeah. That's right. You don't like when I say that to you." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 103).

104.    EEOC admits that Hart called Michael Russo a "loser" in response to him calling her a "dork." Michael Russo often called Hart a "dork." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 103-104).

34

105.    EEOC admits that Hart called Michael Russo a "loser" in response to him calling her a "dork." Michael Russo often called Hart a "dork." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 103-104). Hart could not recall how many times she used that word. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 104-105).

106.    EEOC admits that Hart called Michael Russo an "asshole" after he sexually harassed her and invited her to sit on his lap. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 105). Hart testified that she has no recollection of ever calling Michael Russo an asshole after that incident. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 106). Michael Russo testified that he only remembered one incident where Hart called him an "asshole." (Roberts Decl. ¶ 4, Exh. B, M. Russo Dep., pp. 118-119).

107.    EEOC admits.

108.    EEOC admits.

109.    EEOC denies. Hart did not request to be switched to CBC's payroll. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 293). In fact, Hart viewed CBC, CEP, CCG, CFM and Phoenix to be one company. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 191).

110.    EEOC denies. Defendant's assertion is not supported in any way by its citations to Hart's testimony on page 314 or to Nally's testimony on pages 81-84. (Defendant Exhibit Q and DD).

111.    EEOC denies. There is substantial evidence that Hart was an employee of both CBC and Phoenix when she was on Phoenix's payroll. *See* EEOC's facts in ¶ 28. Defendant's self-serving assertions in its Exhibits Q, R, and HH are not corroborated by any independent evidence from Phoenix.

35

112.    EEOC denies. Hart was transferred from Phoenix' payroll to CBC's payroll on

September 19, 2003 (Defendant Exhibit Q), and this retaliatory transfer occurred after she met

with defense counsel, Brian Sokoloff. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 9; Defendant

Exhibit Q). The transfer was in retaliation for Hart's participation in EEOC's lawsuit. *See*

EEOC Facts in ¶ 119 below, incorporated by reference. Contrary to Defendant's allegations in

this paragraph, there is substantial evidence that Hart was an employee of Defendant CBC, even

though she was on the Phoenix' payroll. For example, Defendant's Exhibit Q contains the

admission that "your possible move from the Phoenix payroll to the CBC payroll is a direct

result of your request to advance and to do different work...when you were initially placed on

the Phoenix payroll your functions for that company were exclusively clerical, over time, you

requested different work. You were given that work; it was work for CBC. Over time your

Phoenix based work has substantially disappeared and your CBC work has become dominant...If

you cannot accept the fact that your current work duties are solely for the benefit of CBC

(justifying payment only from CBC) and wish to, instead, remain on the Phoenix payroll, you

can do that."

Although Defendant CBC claims it offered Hart a $3000 salary increase (Defendant's

Exhibit HH, Roberts Decl. ¶ 3, Exh. A, Exh. C, L. Russo Dep., pp. 207-208) there is substantial

evidence that the move had adverse economic consequences for Hart including requiring her to

pay $30 more per paycheck for CBC benefits than Phoenix, she lost vision coverage at a cost to

Hart of approximately $780 more for out-of-pocket health expenses per year, loss of 401(k) plan

matching funds, (Phoenix contributed up to 3%; and because Hart was not yet vested in her

401(k) plan, Phoenix took back its contribution), and tuition re-imbursement. (Roberts Decl. ¶

27, Exh. AA, Hart e-mail to Giarrusso dated September 16, 2003).

36

113.   EEOC denies. In a September 16, 2003 memo to Giarrusso, Hart outlined in detail the benefits she was going to lose if she was forced to transfer to the CBC payroll. (Roberts Decl. ¶ 29, Exh. AA). Hart wrote the memo to avoid "further confusion." (Roberts Decl. ¶ 29, Exh. AA). Nowhere in Hart's memo does she mention that she is seeking further details about a "proposed transfer." (Roberts Decl. ¶ 29, Exh. AA).

114.   EEOC denies. In the memo, Defendant CBC, through Giarrusso, stated "your possible move from the Phoenix payroll to the CBC payroll is a direct result of your request to advance and to do different work...when you were initially placed on the Phoenix payroll your functions for that company were exclusively clerical, over time, you requested different work. You were given that work; it was work for CBC. Over time your Phoenix based work has substantially disappeared and your CBC work has become dominant...If you cannot accept the fact that your current work duties are solely for the benefit of CBC (justifying payment only from CBC) and wish to, instead, remain on the Phoenix payroll, you can do that." EEOC admits that Hart sought a raise in 2003. (Roberts Decl. ¶ 29, Exh. AA).

115.   EEOC denies. There is evidence that Hart was an employee of both CBC and Phoenix when she was on Phoenix's payroll. *See* EEOC Facts in ¶¶ 28 and 114 above, incorporated by reference. In the memo cited by Defendant (Defendant Exhibit Q), Defendant CBC, through Giarrusso, stated "your possible move from the Phoenix payroll to the CBC payroll is a direct result of your request to advance and to do different work...when you were initially placed on the Phoenix payroll your functions for that company were exclusively clerical, over time, you requested different work. You were given that work; it was work for CBC. Over time your Phoenix based work has substantially disappeared and your CBC work has become dominant...If you cannot accept the fact that your current work duties are solely for the benefit

37

of CBC (justifying payment only from CBC) and wish to, instead, remain on the Phoenix payroll, you can do that." EEOC admits that Hart was told that if she did not move to the CBC payroll, she would have to return to doing receptionist duties. (Defendant Exhibit R).

116.   EEOC denies. Although Hart was offered a small raise in salary, she experienced economic loss. (Roberts Decl. ¶ 29, Exh. AA). *See* EEOC Facts in ¶ 112 above, incorporated by reference.

117.   EEOC denies. Although Defendant offered to pay COBRA benefits for 90 days until the CBC benefits became effective, Hart lost health insurance benefits because those available under the Phoenix plan were better than those available under the CBC plan, requiring Hart to pay $30 more per paycheck for CBC benefits than Phoenix and she lost vision coverage at a cost to Hart of approximately $780 more for out-of-pocket health expenses per year. (Roberts Decl. ¶ 29, Exh. AA; Defendant Exhibit DD, Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 242-243).

118.   EEOC admits.

119.   EEOC denies. The payroll transfer was not voluntary: it was retaliatory and occurred shortly after she met with Defendant's counsel Sokoloff and told him about the sexual harassment she witnessed and experienced. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 9, 13-15, 191-192; 196). At this meeting, Hart told Defendant's attorney Sokoloff that she witnessed Louis Russo screaming at Addeo and calling her a "fat ass," that she was a witness to a lot of women being sexually harassed, and that she was also sexually harassed by CBC's President Michael Russo. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 13-15). This meeting occurred sometime in July or August of 2003. (Roberts Decl., ¶ 10, Exh. H, Hart Dep., pp. 9, 173). Shortly after this meeting with Defendant's counsel, Hart was switched from Phoenix' payroll to

38

CBC's payroll, after being told that she could either return to less fulfilling job duties and remain on the Phoenix payroll with no advancement opportunities, or be switched to the CBC payroll with a loss in benefits. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 191 – 192; EEOC Facts at ¶¶ 112, 115; Defendant Exhibit R, incorporated by reference).   Hart told Giarrusso, CBC's owner Louis Russo and Nally in the September 2003 meeting that she was not happy with having to transfer to CBC's payroll, but she had "no place to go." (Defendant Exhibit R).   Nally and Danielle Croteau told Hart that they believed that the reason Hart was being transferred to CBC's payroll was because she admitted to being sexually harassed by Michael Russo. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 237-239).   Moreover, Hart lost considerable financial benefits because of Defendant's retaliatory actions. *See* EEOC Facts at ¶ 112 above, incorporated by reference.

120.    EEOC admits that Giarusso made the statement quoted, but EEOC denies the implication that Hart was given a "decision." The "decision" was not voluntary and was done in retaliation for Hart's complaints about sexual harassment. *See* EEOC Facts at ¶¶ 112, 119, incorporated by reference.   Hart was told that if she did not move to the CBC payroll, she would have to return to doing "reception desk and mailroom." (Defendant Exhibit R).   Hart told Giarrusso, CBC owner Louis Russo and Nally in the September 2003 meeting that she was not happy with having to transfer to CBC's payroll, but she had "no place to go." (Defendant Exhibit R).

121.    EEOC denies.   Defendant mischaracterizes Hart's testimony.   Hart was not sure whether the memo she was given by Giarrusso was what she reviewed over the weekend. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 202).   When asked if she had thought about the memo over the weekend, Hart testified that she might be "getting [the memo] confused" with the letter she was writing to Giarrusso. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 202).

122.    EEOC denies. Only two managers were present at the meeting with Hart: CBC Vice President of Claims Susan Nally and Vice President of Operations Nicholas Giarrusso. (Defendant Exhibit R). CBC owner Louis Russo was also present and did most of the talking to Hart. (Defendant Exhibit R). Hart was not given voluntary "options" or "choices" but was retaliated against for reporting sexual harassment to Defendant's counsel. *See* EEOC Facts at ¶¶ 112, 119, incorporated by reference. Hart was told that if she didn't move to the CBC payroll, she would have to return to doing "reception desk and mailroom." (Defendant Exhibit R). Hart told Giarrusso, CBC's owner Louis Russo and Nally in the September 2003 meeting that she was not happy with having to transfer to CBC's payroll, but she had "no place to go." (Defendant Exhibit R).

123.    EEOC admits.

124.    EEOC denies. Louis Russo told Hart that she could only switch back to the Phoenix payroll in the future "if there was a position available." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 195-196). In addition, Russo told Hart that the Phoenix position would be "reception desk and mailroom." (Defendant Exhibit R).

125.    EEOC denies. Hart was forced to transfer from the Phoenix payroll to the CBC payroll. There is substantial evidence that Hart had long been an employee of CBC even though she was on the Phoenix payroll. *See* EEOC Facts at ¶¶ 28, 112, 119 above, incorporated by reference.

126.    EEOC denies. There is evidence that Hart was an employee of both CBC and Phoenix when she was on Phoenix's payroll. *See* EEOC Facts in ¶¶ 28 and 114 above, incorporated by reference. Defendant mischaracterizes Hart's testimony. Hart did not testify that she did not want to transfer back to the Phoenix payroll, but only testified that she had not

40

requested a transfer. (Defendant Exhibit DD, Hart Dep.). Louis Russo told Hart that she could only switch back to Phoenix payroll in the future "if there was a position available." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 195-196). In addition, Louis Russo told Hart that the Phoenix position would probably be a receptionist position. (Defendant Exhibit R).

127.    EEOC admits that Hart testified that she was more comfortable, after being transferred from the Phoenix payroll to the CBC payroll, however she also testified but that she felt that she "was retaliated against when they switched [the] payroll" because "people were told not to talk to her," and "not to look" at her. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 196-197).

128.    EEOC admits. However, Defendant replaced the Phoenix agency with a Guardian Life Insurance Company agency at the CBC offices. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 177, Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 79). CBC's owner Louis Russo and CBC's President Michael Russo negotiated with Guardian to be Guardian's "managing people." (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 75). Louis Russo negotiated with several insurance companies because it was important to insure that the Phoenix agency be taken in total. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 75-76, 79; Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 175-176). Guardian agreed to take the agency in total. (Roberts Decl. ¶ 3, Exh. A, L. Russo. Dep. at 79, Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 177). All CBC employees on the Phoenix payroll were re-hired to work on the Guardian agency payroll. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 236 – 237; Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 178-181; Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 77-81).

41

129.   EEOC denies.  Hart could have remained on the Phoenix payroll until the agency was replaced by Guardian, or CBC could have placed her on its payroll and compensated her for the diminution in benefits.  *See* EEOC Facts in ¶ 130 below, incorporated by reference.

130.   EEOC denies.  There is substantial evidence that the employees on the Phoenix payroll were also employees of Defendant CBC.  There is evidence that Hart was an employee of both CBC and Phoenix when she was on Phoenix's payroll.  *See* EEOC Facts in ¶¶ 9, 66, 28, 30 and 114 above, incorporated by reference.  Furthermore, although CBC employees who worked on the Phoenix agency payroll had to re-apply to work on the Guardian payroll, all such employees were placed on the Guardian payroll.  (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 236-237; Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 178-181; Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., pp. 77-81).

131.   EEOC denies.  Defendant CBC, through its President Michael Russo, and its in-house counsel, Anthony Ward, retaliated against Hart by filing a lawsuit against Hart for participating in EEOC's lawsuit.  *See* EEOC Facts in ¶62 above, incorporated by reference.

132.   EEOC denies.  The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward.  (Def. Exhibit N; Roberts Decl., ¶ 4, Exh. B, M. Russo Dep., pp. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M, Piazza Dep., p. 19; Roberts Decl., ¶ 20, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh. X, Aramburo Dep., p. 79).  The lawsuit was filed by Defendant and served on Hart the day before she was to attend the mediation session in EEOC's lawsuit, in unlawful retaliation against Hart for engaging in protected activity under Title VII and participating in EEOC's lawsuit.  (EEOC Facts in ¶¶ 62, 132-133;193-196, incorporated by reference).  Michael Russo is the

42

President of CBC and the Complaint alleges harm to the business. (Defendant's Fact 8;
Defendant Exhibit N).

133.    EEOC denies. The complaint was signed and filed by Defendant CBC through its
in-house counsel, Anthony (Tony) Ward. (Def. Exhibit N; Roberts Decl., ¶ 4, Exh. B, M. Russo
Dep., pp. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M,
Piazza Dep., p. 19; Roberts Decl., ¶ 20, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh.
X, Aramburo Dep., p. 79). Michael Russo is the Vice President of CBC. (Defendant's Exhibit
BB; *see also* EEOC Facts in ¶ 132, incorporated by reference). EEOC admits that the complaint
does not name CBC as a party, however, Michael Russo, who is the President of CBC, alleges
harm to the business. (Defendant's Fact 8; Defendant Exhibit N).

134.    EEOC denies. The lawsuit also alleges harm to the business, and EEOC denies
that such harm occurred as a result of any defamation. EEOC admits that there were allegations
of defamation in Michael Russo's lawsuit. EEOC denies that the statements are defamatory.
*See* EEOC Facts in ¶ 62 above, incorporated by reference.

135.    EEOC denies that this is an admissible material fact relevant to this summary
judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC
admits that Hart taped conversations with Michael Russo recording his sexual harassment of her.

136.    EEOC admits.  Hart complained to several other people at CBC about the sexual
harassment she experienced at Defendant CBC, including Madge Sophia, Greenstein, Melendez.,
and Defendant's counsel Sokoloff (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 86-87, 93-94, 97-
98, 100-101, 284, 288-289; EEOC Facts ¶ 119, incorporated by reference). Hart also
complained to Michael Russo on several occasions that she did not like the sexually offensive
comments he made to her. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 102-103). Michael Russo

43

knew that his behavior was offensive but he continued to sexually harass Hart. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 103). Melendez admitted that Hart complained to her that Michael Russo was sexually harassing her. (Roberts Decl. ¶ 5, Exh. C, Melendez Dep., p. 38).

137.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Hart played the tapes for Giarrusso.

138.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Hart does not recall how many tapes she had.

139.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Hart lost the tapes. When Hart met with defense counsel Sokoloff in July or August of 2003, he told her that the tapes were not admissible in Court. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 5). Hart lost track of the tapes after being told by Sokoloff that they were inadmissible, and does not believe that she destroyed or discarded the tapes. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 5, 16-18).

140.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Giarusso testified that Hart did not play tapes for him.

141.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Hart stated that she was told by Robert Rose that the tapes were inadmissible.

44

142.   EEOC denies. EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Hart stated she probably had the tapes at the time she states she spoke with Rose. She clarified that and testified that because she was told that the tapes were inadmissible, Hart did not bring the tapes to EEOC's attention, and that by the time she was questioned about the tapes by EEOC because others had spoken of them, "I had not had them at that point." (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 19-20).

143.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Hart never presented the tapes to EEOC.

144.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Rose does not recall whether Hart advised him that she had tapes.

145.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Rose never listened to any audio tapes on which can be heard the voices of any employees of Defendant.

146.   EEOC denies that this is an admissible material fact relevant to this summary judgment motion. EEOC does not intend to introduce evidence of any such tapes at trial. EEOC admits that Rose cannot recall having any conversations with Hart about the subject of audiotapes of Defendant or its employees.

147.   EEOC denies. Hart filed a written Charge of Discrimination with EEOC complaining about sexual harassment by the owners of Defendant CBC. (Defendant Exhibit J).

45

In any event, Defendant's procedure does not call for complaints to be put in writing. (Roberts Decl. ¶ 30, Exh. BB, Defendant's Anti-Sexual Harassment Policy). Hart complained verbally to several people at CBC, including Madge Sofia, CBC's former President Greenstein, and Melendez, CBC's Customer Services Manager, and Defendant's counsel, Sokoloff, regarding Michael Russo's sexual harassment of her. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 86-87, 93-94, 97-98, 100-101, 284, 288-289; EEOC Facts ¶ 119 above, incorporated by reference). Hart also complained to Michael Russo on several occasions that she did not like the sexually offensive comments he made to her. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 102 – 103). Michael Russo knew that his behavior was offensive but continued to sexually harass Hart. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 103). Hart also complained to Defendant CBC in an email to Giarrusso that she was being retaliated against. (Defendant Exhibit DD, Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 97).

148. EEOC admits. The email was sent September 22, 2004. Hart was retaliated against by her co-workers at CBC. (Defendant Exhibit DD, Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 97).

149. EEOC denies. Hart complained to several people at CBC, including Sofia, Greenstein, Melendez and Defendant's counsel, Sokoloff, that Michael Russo sexually harassed her. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 86-87, 93-94, 97-98, 100-101, 284, 288-289; EEOC Facts ¶ 119 above, incorporated by reference). Hart also complained to Michael Russo on several occasions that she did not like the sexually offensive comments he made to her. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 102-103). Moreover, Michael Russo knew that his behavior was offensive but he continued to sexually harass Hart. (Roberts Decl. ¶ 10, Exh. H, Hart Dep., p. 103).

## IV.    CLAIMANT FRANCINE AGELONE

150.    EEOC admits.

151.    EEOC denies. In addition to the two statements that Defendant listed in its Statement of Facts, there is a tremendous amount of additional evidence that Defendant CBC subjected Angelone to a sexually hostile environment consisting of severe and pervasive sexual harassment toward her and other females on a daily basis. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 13-15, 24, 39-40, 45-48, 89, 96-97,159, 160). Louis Russo called Angelone a "fucking cunt," used the word "fuck" constantly in her presence, and frequently called her a "fucking moron" (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 13-15, 19-20). CBC owner Lou Russo specifically told Angelone to hire "only pretty women because they're all fucking morons anyway." (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 14). Louis Russo used the word "cunt" in Angelone's presence and referred to her as a "fucking cunt" twice. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 13-15, 19-20, 24). Angelone was directed to pick up Louis Russo's laundry and jock itch cream. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 39-40). Angelone was frequently yelled and screamed at by Louis Russo, and he engaged in physically threatening behavior towards her by pounding his fist against a door frame only inches from her face. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 89, 96 – 97). Louis Russo constantly told Angelone "I'm fucking going to fire you." (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 171).

Angelone was present in the mail room when Michael Russo told Hart that "[y]ou would love every minute if I fucked you." (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 47). Angelone heard Michael Russo tell Martone and another female employee that their breasts were extremely large. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 47). Angelone also heard

47

Michael Russo tell Martone that her husband must be very "horny" because Martone was
pregnant. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 47). Angelone heard Michael Russo
tell her staff that his wife knows that he "fools around." (Roberts Decl. ¶ 11, Exh. I, Angelone
Dep., p. 48). Angelone heard Louis Russo tell a female employee while in a management
meeting that her "ass" was "big." (Roberts Decl. ¶ 11 Exh. I, Angelone Dep., p. 159). Nicole
Nugent, a co-worker of Angelone, told Angelone that Louis Russo offered Nugent his "empire"
if she would sleep with him. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 160).

152.    EEOC denies.  Louis Russo used the word "cunt" in Angelone's presence and
referred to Angelone as a "fucking cunt" on two specific occasions that she recalled. (Roberts
Decl. ¶ 11, Exh. I, Angelone Dep., pp. 13-15, 19-20, 24). John Bohan, a former employee of
CBC, testified that Louis Russo never called him a "cunt" but that he remembers a specific
incident Louis Russo used the intercom to call a female employee a "stupid ass cunt" and that
Louis Russo often used the word "cunt" either in a woman's presence or when referring to a
woman. (Roberts Decl. ¶ 27, Exh. Y, Bohan Dep., pp. 9, 52, -82, 94-95).

153.    EEOC denies.  CBC owner Louis Russo called Angelone a "fucking cunt" on two
specific occasions. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 19-20).

154.    EEOC denies.  Louis Russo called Angelone a "fucking cunt" twice. (Roberts
Decl. ¶ 11, Exh. I, Angelone Dep., pp. 19-20). Angelone testified that on one occasion when
Louis Russo called her a "fucking cunt" he "screamed at me, and then walked away and
whispered - - and said to Nick, 'fucking cunt.'" (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp.
19-20).

155.    EEOC denies.  Angelone did not testify that Louis Russo treated Giarrusso
similarly to the way he treated her. Angelone testified that Louis Russo would often take men

48

into his office before he screamed at or berated them. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 169-170). Angelone testified that Louis Russo treated Giarrusso "horribly", "[b]ut with Nick [Giarrusso] and me, it was - - **especially with me** for some reason when Lou Russo saw my face, it was like he saw the devil... and it turned him on. It turned him into this person that he just needed to scream." (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 170, emphasis added).

156.    EEOC denies. Defendant mischaracterizes Angelone's testimony. Angelone testified about numerous incidents in the office that she found to sexually offensive and hostile. *See* EEOC Facts in ¶¶ 150 and 155 above, incorporated by reference.

157.    EEOC denies. Defendant mischaracterizes Angelone's testimony. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 169-170). Angelone testified that Louis Russo may have treated Giarrusso "horribly," but his treatment of Angelone was "especially" bad. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 170). Angelone testified that Louis Russo treated her differently than the male employees because he screamed at her in front of others but would discuss issues with men in their offices. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 19 – 20, 169 – 170). When Louis Russo screamed at Giarrusso, he would do so in Louis Russo's office. (Roberts Decl., ¶ 8, Exh. F, Giarrusso Dep., pp. 68 – 69).

158.    EEOC denies. Defendant mischaracterizes Angelone's testimony. Roberts Decl., ¶ 9 Exh. I, Angelone's Dep. pp. 169-170. Although Louis Russo called Giarrusso a "fuckin' moron" (Defendant Exhibit FF, Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 169), Giarrusso claims that he never heard Louis Russo call him that name. (Roberts Decl. ¶ 8, Exh. F, Giarrusso Dep., pp. 68 – 69). Louis Russo may have called Giarrusso names, but his treatment of Angelone was "especially" bad. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., 169-170).

49

159. EEOC denies. Defendant mischaracterizes Angelone's testimony. *See* Defendant Exhibit FF, Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 280-281. Several women, including Angelone, were intimidated by Louis Russo. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 280-282; Roberts Decl. ¶ 10, Exh. H, Hart Dep., pp. 102 - 103). EEOC's claim regarding Angelone and other female employees at CBC is that Angelone and other female employees were subjected to a sexually hostile work environment by Defendant. *See* EEOC Facts in ¶ 171 below, incorporated by reference, and Defendant Exhibit A and C.

160. EEOC admits.

161. EEOC admits that Angelone did not file a written complaint, but denies that a written complaint was required under Defendant's policy. (See EEOC's Exhibit BB). The sexual harassment policy that Angelone signed lists Giarrusso as the person to go to if there are any complaints of sexual harassment and does not require written complaints. (Defendant's Exhibit P). Furthermore, Angelone often made verbal complaints to Giarrusso about Louis Russo's offensive behavior. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 282-283). Angelone also verbally complained about the sexual harassment to Patricia Stovall, the Office Administrative Director at Phoenix. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 34-36, 98-101, 106-109). Angelone testified that someone at Phoenix called Giarrusso about the complaint and told him that the unprofessional behavior had to stop. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 106-109). Angelone was afraid to make al written complaint because she was afraid of Louis Russo. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 110-111, 280-282).

162. EEOC denies that this is a material fact relevant to this motion. In addition, Defendant mischaracterizes Angelone's testimony about complaints in general. (See EEOC Facts in ¶161, incorporated by reference).

50

163.    EEOC admits that Angelone signed the form. However, Defendant mandated that all employees sign the document. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 60 – 61). Angelone testified the she was intimidated and afraid of Louis Russo. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., 110-111, 280-282). Angelone testified that she made several complaints to Phoenix. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 34-36, 98-100, 110-111). Angelone was sexually harassed by Louis Russo. (See EEOC Facts ¶ 151 above, incorporated by reference). Moreover, the policy was revised in May of 2004, after Addeo and Hart filed their EEOC charges. (See Defendant Exhibit I and J).

164.    EEOC admits that Angelone was directed by Defendant to type the form for Defendant. Defendant has not complied with Local Civil Rule 56.1(d) and Fed. R. Civ. Pro. 56 (e) inasmuch as Defendant has not cited evidence which would be admissible in support of its alleged statement of fact. The document cited by Defendant, Defendant Exhibit U, is not authenticated, lacks foundation and is not in evidentiary form.

165.    EEOC denies that this is a material fact relevant to this summary judgment motion. EEOC filed its complaint on behalf of Jean Marie Addeo, Laura Hart and "other similarly situated women." (Defendant Exhibit A). Angelone testified that she considers herself to be a part of EEOC's lawsuit. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 311-312).

166.    EEOC denies that this is a material fact relevant to this summary judgment motion. Angelone testified that she considers herself to be a part of EEOC's lawsuit. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 311-312).

167.    EEOC denies that this is a material fact relevant to this summary judgment motion. Angelone testified that she considers herself to be a part of EEOC's lawsuit. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., pp. 311 – 312). EEOC's complaint alleged that Addeo, Hart

51

and "similarly situated women" were subjected to sexually harassing conduct by Louis and

Michael Russo while they worked at CBC. (Defendant's Exhibit A). Subsequently, EEOC

learned of and identified additional persons with knowledge who EEOC believed may be

claimants. (Roberts Decl. ¶ 22, Exh. T; see Defendant Exhibit K).

## V.   CLAIMANT MICHELLE MARTONE

168.   EEOC denies. In addition to the three incidents that Defendant listed in its

Statement of Facts ¶¶ 171, 172, and 173, there is substantial additional evidence that Defendant

CBC subjected Martone to a sexually hostile environment consisting of severe and pervasive

sexual harassment toward her and other female employees in her presence on a daily basis.

(Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 74-75).

When Martone first started working for Defendants, Michael Russo would make vulgar

comments about her legs, telling her she should wear skirts more. (Roberts Decl. ¶ 7, Exh. E,

Martone Dep., pp. 47, 52-53, 70-71). Tobin, Martone's immediate supervisor, overheard

Michael Russo tell Martone that her calves were getting fat. (Roberts Decl. ¶ 6, Exh. D, Tobin

Dep., pp. 17-19). Michael Russo frequently harassed Martone about the size of her breasts,

making hand gestures to indicate that her breasts were getting bigger. (Roberts Decl. ¶ 7, Exh. E,

Martone Dep., pp. 77-78). Angelone heard Michael Russo tell Martone and another female

employee that their breasts were extremely large. (Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p.

47). He often made derogatory comments about Martone's body, such as "you packed it on

good" (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 76), and he called her a "tuna" on "almost a

daily basis" when she was pregnant. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 47, 74-75).

On one occasion when Michael Russo made a derogatory comment about her weight, Martone

told him to "back off" and he responded by saying "oh, what's wrong with you, you're very

52

hormonal, are you pregnant." (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 114-115).

Comments were made to Martone during her pregnancy that there are hormones during

pregnancy that affect sexual behavior. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 21). For

example, Michael Russo told Angelone that her husband "was a lucky guy because during the

fifth month of pregnancy, his wife wanted to hump like rabbits." (Roberts Decl. ¶ 7, Exh. E,

Martone Dep., p. 47; Roberts Decl. ¶ 9, Exh. I, Angelone Dep., p. 47). Tobin overheard Michael

Russo tell Martone that "now that she's pregnant, she must get horny a lot." (Roberts Decl. ¶ 6,

Exh. D, Tobin Dep., pp. 15-19 at 18). Michael Russo made sexually harassing comments to

other women in Martone's presence. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 78, 202).

Michael Russo would make comments when women walked by, and would follow one woman

down the hall. (Roberts Decl. ¶ 7 , Exh. E, Martone Dep., p. 78). On one occasion he told a

female employee "oh, no bra today? That's great, you should do that every day." (Roberts Decl.

¶ 7, Exh. E, Martone Dep., p. 78). Martone also testified that a co-worker moved her office so

that she would not be subjected to the hostile environment. (Roberts Decl. ¶ 7, Exh. E, Martone

Dep., pp. 204-205).

    The atmosphere for Martone and other women at CBC was hostile and demeaning, with

constant use of foul language and vulgarities, including "[t]he 'C' [cunt] word being thrown

around as if it was good morning" by Louis Russo. (Roberts Decl. ¶ 7, Exh. E, Martone Dep.,

pp. 54, 56, 143, 157-158, 162-164, 199, 202-203). CBC owner Louis Russo "went to go kick"

the base of Martone's chair while telling her to get the "F" out of her chair. (Roberts Decl. ¶ 7,

Exh. E, Martone Dep., pp. 164-165). CBC owner Louis Russo also subjected Martone to

unwanted touching: at a Christmas gathering in the office, in front of fellow co-workers, Louis

Russo hugged and placed his head on Martone's breast. (Roberts Decl. ¶ 7, Exh. E, Martone

Dep., pp. 234-235). Martone was very uncomfortable with this inappropriate gesture and pushed Louis Russo away. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 234-235).

169. EEOC denies. While Martone worked for CFM Advisors, she was also an employee of CBC for Title VII purposes. Defendant has admitted that Martone was a CBC employee. Defendant's Exhibit F, "lists of defendant CBC's male and female employees for the past 10 years," (Stern Decl., ¶ 7), identifies Martone as a CBC employee. Defendant's Exhibit E, a copy of the webpage for CBC, shows the existence of an integrated enterprise and demonstrates that Defendant shares a website with CFM Advisors. *See also* EEOC Facts in ¶¶ 1, 6, 8, 9 and 30 above, incorporated by reference. CBC President Michael Russo interviewed Martone and hired her to work with him. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 51, 232-233; Roberts Decl. ¶ 6, Exh. D, Tobin Dep., pp. 65-67). Michael Russo was Martone's boss. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 48-51). Martone believed that Michael Russo, as President of "the company," was President of CFM Advisors. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 48-51). Martone's immediate supervisor, Tobin, reported to CBC's owner Louis Russo and attended meetings with Michael Russo. (Roberts Decl. ¶ 6, Exh. D, Tobin Dep., pp. 49-50; Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 52). CBC President Greenstein worked closely with CFM Advisors and had overall responsibility for both CFM Advisors and CEP. (Roberts Decl. ¶ 3, Exh. A, L. Russo Dep., p. 24). CBC President Michael Russo brought on clients from CBC to CFM Advisors. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 52). CBC's President Michael Russo, CBC's owner Louis Russo and "the sales people from CFM Advisors," along with Tobin and Kevin Sweeney, generated business for CFM Advisors. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 40).

170. EEOC denies. *See* EEOC Facts in ¶ 189, incorporated by reference.

54

171. EEOC denies. Michael Russo did not tell Martone that her legs looked "good" as alleged by Defendant, and Martone's testimony cited by Defendant, does not support that allegation: the word that Michael Russo used to describe Martone's legs was "jacked." (Defendant Exhibit EE, Martone Dep., p. 53; Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 70-71). Tobin, Martone's immediate supervisor, overheard Michael Russo tell Martone that her calves were getting fat. (Roberts Decl. ¶ 6, Exh. D, Tobin Dep., p. 19). EEOC admits that Michael Russo told Martone that she should wear skirts more often.

172. EEOC admits. CBC President Michael Russo made almost daily comments about Martone's body when she was pregnant, such as calling her a "tuna" on "almost a daily basis" when she was pregnant, (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 47, 74 – 75) as telling her "you packed it on good." (Roberts Decl. ¶ 7, Exh. E, Martone Dep., p. 76). On one occasion when Michael Russo made a derogatory comment about her weight, Martone told him to "back off" and he responded by saying "oh, what's wrong with you, you're very hormonal, are you pregnant." (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 114 – 115). Martone did not testify regarding the number of times that Michael Russo made lewd gestures about the increasing size of her breasts during her pregnancy, and Angelone heard Michael Russo tell Martone and another female employee that their breasts were extremely large. (Defendant Exhibit EE, Martone Dep., pp. 77-78; Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 47).

173. EEOC admits. However, Defendant does not fully describe Michael Russo's lewd comments to Martone. (Defendant Exhibit EE, Martone Dep., pp. 77-78). Michael Russo told Martone that her husband "was a lucky guy because during the fifth month of pregnancy, his wife wanted to hump like rabbits," and Angelone heard Michael Russo tell Martone that Martone's husband must be very "horny" because of the pregnancy. (Roberts Decl. ¶ 7, Exh. E,

Martone Dep., p. 47; Roberts Decl. ¶ 11, Exh. I, Angelone Dep., p. 47).  Tobin overheard

Michael Russo tell Martone that "now that she's pregnant, she must get horny a lot." (Roberts

Decl. ¶ 6, Exh. D, Tobin Dep., pp. 15-19 at 18).

 174. EEOC denies.  EEOC admits that the sexually hostile work environment

Defendant subjected Martone to also included "cursing, vulgarity [and] the irate rants of Lou

Russo" towards Martone and other women. (Defendant Exhibit EE, Martone Dep., p. 199).

However, although she was not fully questioned by defense counsel about all of the episodes of

sexual harassment and the hostile environment, Martone testified extensively about the sexually

hostile work environment that she and other women were subjected to by CBC owner Louis

Russo and CBC President Michael Russo. *See* EEOC Facts in ¶ 168 above, incorporated by

reference.

 175. EEOC denies.  Martone filed a verified written Charge of Discrimination with

EEOC (Roberts Decl. ¶ 31, Exh. CC, Martone's Charge of Discrimination).  Although the

citation given by Defendant in support of this allegation does not support the allegation

(Defendant Exhibit EE, Martone Dep., p. 90), EEOC admits that Martone never made a written

complaint to Defendant about sexual harassment.  In any event, Defendant's procedure does not

call for complaints to be put in writing. (Roberts Decl. ¶ 30, Exh. BB, Defendant's Anti-Sexual

Harassment Policy.

 176. EEOC denies.  The citation given by Defendant in support of this allegation does

not support the allegation. (Defendant Exhibit EE, Martone Dep., p. 90).  Martone complained

to CBC President Michael Russo about his offensive conduct, telling him "you're so gross" or to

"back off." (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 72, 114-115).  She was afraid to

complain more specifically to him because he was her boss and the President of the company.

(Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 48-51). Many of the sexually harassing comments by Michael Russo to Martone were made in the presence of her immediate supervisor, Tobin. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 46-47; Roberts Decl. ¶ 6, Exh. D, Tobin Dep., pp. 14-19). Tobin overheard Michael Russo tell Martone that "now that she's pregnant, she must get horny a lot" and that her calves were getting fat. (Roberts Decl. ¶ 6, Exh. D, Tobin Dep., pp. 15-19). Tobin did not follow Defendant's "Anti-Sexual Harassment" policy (Defendant Exhibit P), and report the harassment of Martone by Michael Russo that he had witnessed, because, as he stated, "who am I going to report it to?" (Roberts Decl. ¶ 6, Exh. D, Tobin Dep., pp. 14-19, at p. 15). Martone complained to co-workers Robert Sinatra, Madge Sofia and Maria Piper. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 225-227, 216). Martone also complained to Anthony Ward, who is CBC's in-house counsel and the attorney who filed the defamation lawsuits against Addeo and Hart. (Roberts Decl. ¶7, Exh. E, Martone Dep., p. 229; *See also* EEOC Facts in ¶ 60 above, incorporated by reference). Martone testified that she was afraid to make any formal complaints to Giarrusso, because she knew that a woman who had made a complaint about the hostile work environment was terminated shortly after making the complaint. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 90-91).

177.    EEOC admits. Martone waited to file her EEOC Charge because she was afraid of that Defendant would retaliate against her before her unemployment benefits were up. (Roberts Decl. ¶ 7, Exh. E, Martone Dep., pp. 6-7).

## VI.    CLAIMANT JEAN MARIE ADDEO

178.    EEOC admits. Addeo complained to Michael Russo, Louis Russo, CBC President Greenstein, CBC Vice President of Claims, Susan Nally, Defendant's Director of Operations, Nicholas Giarrusso and Anthony (Tony) Ward, Defendant's in-house counsel (and

the attorney who filed the Defendant's defamation lawsuit against her), and others about Michael

Russo's inappropriate and sexually offensive behavior, but she was told to brush it off and ignore

Michael Russo.  (Roberts Decl.¶ 17, Exh. O, Addeo Dep., pp. 49-50, 64-85, 94-97, 98-100, 113-

119; 175-176, 178, 180-184).  When Addeo complained to Louis Russo about the offensive

conduct by his son Michael Russo, Louis Russo said to her, "'Ignore him.  He did the same thing

to his sister.  He's just getting a rise out of you.  If you ignore him, he'll go away.  If you ignore

him and don't fight back, he'll leave you alone.  Just ignore him.'" (Roberts Decl.¶ 17, Exh. O,

Addeo Dep., pp. 84-85).  Louis Russo also told Addeo that if she didn't like what he was saying,

she "could pack [her] shit and get the fuck out of the building."  (Roberts Decl.¶ 17, Exh. O,

Addeo Dep., p. 60).

 Addeo complained several times to Greenstein.  (Roberts Decl.¶ 17, Exh. O, Addeo Dep.,

pp. 65-77).  CBC's Anti-Sexual Harassment Policy stated that "Supervisors who receive

complaints about sexual harassment or who are made aware of conduct constituting sexual

harassment are immediately required to notify Nick Giarrusso."  (Roberts Decl. ¶ 30, Exh. BB).

Greenstein did not follow the policy: she would not pursue a verbal complaint unless the person

complaining put it in writing, and would not handle a complaint unless the person told her that

they wanted it to be "handled" further. ( Roberts Decl. ¶ 9, Exh. G, Greenstein Dep., pp. 43-46).

 179.    EEOC admits.  *See also* EEOC Facts in ¶¶ 32, 178 above, incorporated by

reference and EEOC Facts in ¶ 180 below, incorporated by reference.

 180.    EEOC denies.  Defendant mischaracterizes Addeo's testimony.  *See* EEOC Facts

in ¶ 32 above, incorporated by reference, about Michael Russo's sexual harassment of Addeo.

Addeo testified that in addition to complaining to Louis Russo about the derogatory comments

Michael Russo made about her body and the incident where Michael Russo lunged across the

car, put his head in her neck and his left arm across her, and pretended to kiss her, (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 105-112), Addeo also complained to Louis Russo that his son "Michael was offensive... I explained to Lou that I already approached Michael and asked him to stay away from certain comments, especially in front of staff, because it wasn't appropriate... I then later on told Lou about Michael calling my husband a faggot and a homo." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 82-83).

181.    EEOC denies. Addeo complained to Michael Russo about the incident in the car and told him that she found it to be inappropriate and embarrassing. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 105,116 – 118). Michael Russo ignored the complaint and told her that it was a "joke," and that she was "being a baby," "overreacting" and "what's the big deal." (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 105, 111 – 112, 116 – 118). Addeo told her co-workers about the incident and that she embarrassed and upset by it. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 112-114).

182.    EEOC denies that this is a material fact relevant to this motion for summary judgment. Defendant mischaracterizes and exaggerates. Defendant Exhibit V, is a single, short e-mail thread that speaks for itself. The email is not addressed to either Louis Russo or Michael Russo and does not show that Addeo welcomed the sexually hostile conduct by the owner and President of the company that employed her.

183.    EEOC denies that this is a material fact relevant to this motion for summary judgment. Addeo denies reading or forwarding any e-mails of a sexual nature to co-workers while at CBC. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 325-327). Furthermore, Exhibits W, X, and Y are not addressed by Addeo to Louis Russo or Michael Russo and do not show that

Addeo welcomed the sexually hostile conduct by the owner and president of the company that employed her.

184.    EEOC denies. Addeo "occasionally" cursed in the office. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., p. 150). She also testified that she never cursed at anyone or called them foul names to their face. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 150, 303).

185.    EEOC admits that Addeo told Zwerling that Mario Jordon was a "fucking idiot" on a single occasion after he made a costly mistake. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 260-261).

186.    EEOC admits.

187.    EEOC denies in that it implies that Addeo welcomed the sexually harassing and discriminatory actions of Louis Russo because she joked about him at times. The exhibit cited by Defendant in support of this allegation does not indicate that Addeo made the alleged comments directly to Louis Russo. (Defendant Exhibit MM).

188.    EEOC admits.

189.    EEOC admits.

190.    EEOC denies. Addeo testified that on "occasions it was voluntary," but that occasionally she "was ordered to go to Barolo's." (Defendant Exhibit CC, Addeo Dep., p. 93). Addeo also testified that "it was very difficult not to" go out to dinner at Barolo's with Louis Russo, and that she felt she had to go because when she declined the invitation, Louis Russo would give her "a hard time" and "haunt" her the next day until she relented. (Roberts Decl. ¶ 17, Exh. O, Addeo Dep., pp. 93, 128-131).

60

191.   EEOC denies.  Addeo testified that these were not "necessarily" social outings, and that "a portion of the night we talked about business..." (Defendant Exhibit CC, Addeo Dep., pp. 128-129).

192.   EEOC admits.

193.   EEOC denies.  Defendant CBC, through its President Michael Russo, and its in-house counsel, Anthony Ward, retaliated against Addeo by filing a lawsuit against Addeo for participating in EEOC's lawsuit. *See* EEOC Facts in ¶¶ 60 and 62 above, incorporated by reference.

194.   EEOC denies.  The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward. (Def. Exhibit M; Roberts Decl., ¶ 4, Exh. B, M. Russo Dep., pp. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M, Piazza Dep., p. 19; Roberts Decl., ¶ 20, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh. X, Aramburo Dep., p. 79).  The lawsuit was filed by Defendant and served on Addeo the day before she was to attend mediation in EEOC's lawsuit, in unlawful retaliation against Addeo for engaging in protected activity under Title VII and participating in EEOC's lawsuit. (EEOC Facts in ¶¶ 62, 132-133; 193-196, incorporated by reference).  Michael Russo is the President of CBC and the Complaint alleges harm to the business. (Defendant's Fact 8; Defendant Exhibit M, Complaint against Addeo).

195.   EEOC denies.  The complaint was signed and filed by Defendant CBC through its in-house counsel, Anthony (Tony) Ward. (Def. Exhibit M; Roberts Decl., ¶ 4, Exh. B, M. Russo Dep., pp. 34; Roberts Decl., ¶ 7, Exh. E, Martone Dep., p. 91; Roberts Decl.; ¶ 15, Exh. M, Piazza Dep., p. 19; Roberts Decl., ¶ 20, Exh. R, Fanning Dep., p. 84; Roberts Decl., ¶ 26, Exh. X, Aramburo Dep., p. 79).  Michael Russo is the President of CBC. (Defendant's Exhibit BB;

see also EEOC's response to paragraph 132). EEOC admits that the Complaint does not name CBC as a party, however, Michael Russo, who is the President of CBC, alleges harm to the business. (Defendant's Fact ¶ 8; Defendant Exhibit M).

196.    EEOC denies. The lawsuit also alleges harm to the business, and EEOC denies that such harm occurred as a result of any defamation. EEOC admits that there were allegations of defamation in Michael Russo's lawsuit. EEOC denies that the statements are defamatory. *See* EEOC Facts in ¶¶ 60 and 62 above, incorporated by reference.

Dated: New York, New York
        January 20, 2006

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

By: _____

Monique J. Roberts (MR6338)
Trial Attorney
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
(212) 336-3704

62

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff Equal Employment Opportunity

Commission's Rule 56.1 Statement of Disputed Material Facts in Opposition to Defendant's

Motion for Summary Judgment, was served by First Class Mail this 20th day of January 2006

to:

Brian Sokoloff, Esq.
Miranda & Sokoloff, LLP
240 Mineola Boulevard
Mineola, NY 11501
516-741-7676

MONIQUE J. ROBERTS
Trial Attorney
Equal Employment
Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
212-336-3704 (Telephone)
212-336-3623 (Fax)

63